The PEOPLE of the State of
Colorado, Complainant,

v.

David S. YOST, Attorney-Respondent.

No. 85SA407.

Supreme Court of Colorado,
En Banc.

Nov. 3, 1986.

George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Breit, Best, Richman and Bosch, P.C., Susan Smith Fisher, Robert G. Heiserman, Denver, for attorney-respondent.

ERICKSON, Justice.

In this disciplinary proceeding, the hearing panel adopted the hearing board's findings of fact and conclusions but rejected the hearing board's recommendations for discipline. Four members of the panel recommended that the respondent be disbarred and assessed costs because they found an egregious pattern of misconduct coupled with a variety of offenses and the fabrication of evidence with no mitigating circumstances. Four members of the panel recommended a three-year suspension and an assessment of costs against the respondent. Although we consider the recommendation of the grievance committee and give that recommendation great weight, we reserve the right to exercise our own independent judgment in arriving at the disciplinary sanction. *People v. Fitzke*, 716 P.2d 1065 (Colo.1986). The ABA Standards for Imposing Lawyer Sanctions provide guidance:

> 4.42: Suspension is generally appropriate when:
>
> (a) a lawyer knowing fails to perform services for a client and causes injury or potential injury to a client; or
>
> (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

Standards for Imposing Lawyer Sanctions Standard 4.42 (1986).

The commentary to standard 4.42 states that suspension should be imposed when a lawyer knows that he is not performing the services requested by his client and does nothing to remedy the situation. Here, the respondent not only knew of his neglect of legal matters, but attempted to mislead his clients and the grievance committee with false documents.[1]

---

**1.** Standard 4.62 provides:

Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

Standards for Imposing Lawyer Sanctions Standard 4.62 (1986).

In this case, we order that the respondent be suspended from the practice of law for a period of three years and that he be assessed the costs of the disciplinary proceedings.

The respondent, David S. Yost, was admitted to the bar of this court òn October 17, 1977. Prior to his admission in Colorado, he practiced law in Florida with primary emphasis on insurance defense and commercial collection work. He also worked for the United States Department of Health, Education, and Welfare. Two of the complaints against the respondent involved his representation of government employees who asserted claims against government agencies. An additional complaint was made by the National Association of Credit Management as a result of the respondent's handling of collection accounts and his failure to promptly return costs that had been advanced by his client. The hearing board concluded that a number of documents were fabricated and prepared by the respondent in an attempt to avoid responsibility for unprofessional conduct.

More than thirteen witnesses testified and approximately 200 exhibits were presented to the hearing board. In addition, the respondent supplemented the record after the record was presented to this court by the grievance committee. No good purpose would be served by reviewing in minute detail the testimony and exhibits which were presented to the grievance committee. Suffice it to say, the respondent has not complied with the highest ethical and professional standards set forth in the Colorado Rules of Civil Procedure and the Code of Professional Responsibility. The record establishes by clear and convincing evidence violations of C.R.C.P. 241.6(1) and (3) (acts or omissions that violate Code of Professional Responsibility and highest standards of honesty, justice, or morality), DR 1–102(A)(1) (violation of a disciplinary rule), DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation), DR 1–102(A)(5) (conduct prejudicial to the administration of justice), DR 6–101(A)(3) (neglect of a legal matter entrusted to him), and DR 9–102(B)(4) (failure to promptly pay or deliver funds or property of a client upon request).

A brief description of respondent's neglect of matters entrusted to him emphasizes the extent of the respondent's misconduct and his total disregard of the Code of Professional Responsibility.

### David E. Florence

The respondent was retained by David E. Florence to bring suit against the Department of Health, Education, and Welfare to prevent his transfer to Kansas City. Florence was subsequently transferred to Kansas City, and the respondent was asked to bring a suit under the Freedom of Information Act to obtain agency records relating to the transfer decision. Florence advanced $50 for costs, agreed to pay the respondent $50 per hour for legal services, and paid substantial fees. The respondent filed a complaint for Florence in the United States District Court for Colorado under the Freedom of Information Act. The government responded by asserting that the District Court in Colorado lacked jurisdiction because Florence was no longer a resident of Colorado and was employed in Kansas City. The respondent confessed the motion, and the case was transferred to the United States District Court in Kansas City.

Thereafter, Florence pursued his own claim and obtained the documents sought in the suit and was successful in securing a transfer back to Denver. The respondent told Florence that he would have the case transferred back to Denver so that costs and attorney fees could be recovered, but he never took the steps necessary to secure a transfer. An assistant United States Attorney in Kansas wrote the respondent and inquired about further action in the Freedom of Information Act case, but received no reply. Later, the same United States Attorney wrote the respondent and stated that the case should be transferred to Denver because Florence was now in Denver, and suggested that the respondent file the appropriate pleadings. No pleadings were

filed, and no response was made to the letter. A third letter from the United States Attorney also received no response.

The respondent failed to comply with the transfer requirements, and when respondent did not appear at a pretrial hearing in Kansas City, a magistrate recommended dismissal of the case unless respondent cured his neglect by July 15, 1982. The respondent took no action, and on August 10, 1982, the court issued an order to show cause why the case should not be dismissed for lack of prosecution. On November 3, 1982, the case was dismissed when no response was filed. The respondent told Florence that he had filed the proper motions to transfer the case to Colorado, but failed to produce the motion. No motion was ever filed.

To justify his conduct, the respondent produced a letter that he purportedly sent to his client stating that the case could not be won and that dismissal, rather than transfer, was warranted. Florence denied receiving the letter and noted that the letter was sent to the wrong address. When Florence requested an accounting, he was told that the respondent's time records were stolen from his automobile.

C.R.C.P. 241.6(1) describes professional misconduct as any act or omission which violates the provisions of the Code of Professional Responsibility. The respondent, in representing Florence, violated DR 1–102(A)(1) by violating a disciplinary rule. He violated DR 1–102(A)(4) and (5) by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation, which was prejudicial to the administration of justice.[2]

### Marion John Philippus

The respondent was retained by Dr. Marion John Philippus to prosecute a claim against the United States Department of Health and Human Services to maintain Dr. Philippus's veteran's preference in the face of an impending reduction in force. Dr. Philippus paid the respondent a substantial fee, but the respondent again neglected the legal matter entrusted to him. In addition, the respondent breached his ethical obligations to his client and to the bar by fabricating documents to justify his conduct. *See People v. Klein,* 179 Colo. 408, 500 P.2d 1181 (1972).

Dr. Philippus received a reduction in force notice and filed a grievance with the Department of Health and Human Services because of the denial of his veteran's preference. The American Federation of Government Employees Union initiated a class action grievance on behalf of all employees adversely affected by the reduction in force, and on January 4, 1982, Dr. Philippus was notified that he was among those included in the reduction in force. In January 1982, Dr. Philippus was placed with the Social Security Administration at a greatly reduced salary and with a demotion in grade.

In February 1982, Dr. Philippus initiated another grievance with the Department of Health and Human Services alleging that his termination was the result of prohibited discrimination by his supervisor. In April 1982, the respondent learned that the discrimination complaint would not be processed by the Department of Health and Human Services because of the pending union grievance. In June 1982, Dr. Philippus asked the respondent to file a Freedom of Information Act request to obtain three documents. The respondent agreed to file the action, and later told Dr. Philippus that he had filed the action. No such action was filed. Despite frequent requests by Dr. Philippus, the respondent failed to provide a copy of the access request. The respondent did, in August 1982, file suit against one of Dr. Philippus's supervisors, alleging defamation of Dr. Philippus, but

**2.** DR 1–102(A)(1), (4) & (5) provide:
  (A) A lawyer shall not:
  (1) Violate a Disciplinary Rule.
  (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

  (5) Engage in conduct that is prejudicial to the administration of justice.

the respondent admits that he never intended to serve the defamation complaint and intended to redraft it at a later time. At the time the complaint was filed, he prepared handwritten summonses but never effected service. The respondent totally failed to prosecute the case.

Dr. Philippus learned in August that the union grievance would be closed, and asked the respondent to proceed with suit on his veteran's preference. Respondent learned that there was a thirty-day time limit for filing the suit and advised Dr. Philippus that he would immediately file suit. When Dr. Philippus discovered that neither the defamation suit nor the veteran's preference suit had been filed, Dr. Philippus sent the respondent a letter discharging him and requesting an accounting. No accounting was provided, and respondent did not deliver the file to new counsel until two weeks after the request was made and four days after the deadline specified for the filing of the veteran's preference suit.

An order was issued to show cause why the defamation case should not be dismissed for failure to prosecute, and the respondent took no action until two days before the deadline for a response. The respondent sent a copy of the order to new counsel and included with it an unsigned letter under an earlier date that purportedly included the order to show cause. New counsel did not receive the purported first letter and did not know of the response deadline until he received the second letter one day after the deadline expired.

The hearing board found by clear and convincing evidence that the respondent violated C.R.C.P. 241.6(1) and (3) because of respondent's violations of the disciplinary rules and his failure to comply with the highest standards of honesty, justice, and morality. The respondent's conduct violated DR 1–102(A)(1) (violation of a disciplinary rule), DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 6–101(A)(3)

(neglect of a legal matter entrusted to him).[3]

### National Association of Credit Management

In 1981, the National Association of Credit Management (NACM) forwarded 121 accounts to the respondent for collection. The accounts totaled approximately $348,000, and NACM advanced court costs in the amount of $8,350. The costs were advanced to pay filing fees, service fees, and post-judgment costs, such as garnishments and transcripts. The respondent failed to provide the required progress reports to NACM. Respondent justified his failure by blaming secretaries and his computer.

Respondent left the law firm where he was associated and shortly thereafter contacted the credit manager of NACM. Respondent reported that his computer problems were solved and provided a partial list of reports on the accounts that had been forwarded to him. A number of files were reported closed as uncollectible, but the unused costs were not returned. The credit manager made repeated requests for the return of the original documents and the unused costs on the closed files. A status report was also requested on the outstanding cases. In some instances the respondent complied with the request and in others he did not. The respondent complained at one point that he had forwarded reports that subsequently had been lost by NACM.

In January of 1982, the respondent sent a refund check to NACM indicating that it was for the unused costs on thirty-eight cases. However, he failed to return the documents or the files on the thirty-eight cases. In March of 1982, upon NACM's request, the respondent promised to return original documents in twenty cases, but never did. In May, the credit manager wrote the respondent demanding the return of three specific files by a date certain, along with the original documents and unused costs. He also requested that other

**3.** DR 6–101(A)(3) provides:
   (A) A lawyer shall not:

   (3) Neglect a legal matter entrusted to him.

files be returned if not currently subject to payment arrangements with the debtor. The respondent did not comply with the request and NACM hired counsel to obtain the files. In July the respondent returned some of the files, but refused to return others.

Prior to the filing of a grievance, the respondent did not account for costs, and payment was not made until grievance proceedings were commenced. The record also reflects that, at times, respondent's cost and trust account did not have sufficient funds to cover the costs owed to NACM. The respondent has admitted neglect of the NACM accounts and his failure to provide status reports. He also acknowledges that he failed to withdraw from representation of NACM after he was discharged and that he did not return the files upon demand or refund the unused costs advanced by NACM.

The hearing board found by clear and convincing evidence that the respondent's conduct violated C.R.C.P. 241.6(1) and (3), and that the respondent violated DR 6–101(A)(3) (neglect of a legal matter), DR 9–102(B)(4) (a lawyer shall promptly deliver property to client to which client is entitled),[4] DR 1–102(A)(1) (violation of a disciplinary rule).

### Fabricated Letters

Strong, if not indisputable, circumstantial evidence establishes that the respondent fabricated letters to try to justify his position and excuse his negligent handling of legal matters entrusted to him. A substantial number of documents were fabricated. *Mintz v. Premier Cab Association, Inc.*, 127 F.2d 744 (D.C.Cir.1942), provides an answer to the respondent's claim that the fabrication of exhibits was not proven:

A jury may discount or disregard testimony which runs counter to normal experience. . . . Fortuitous events of a given sort are less likely to happen repeatedly than once. The fact that a witness has told several stories involving similar fortuitous events tends, therefore, to create a conflict between his testimony and normal experience.

Id. at 744 (footnote omitted).

The hearing board concluded that the respondent's submission of false documents to the grievance committee violated C.R.C.P. 241.6(7) and DR 1–102(A)(1) (violation of a disciplinary rule), DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation), and DR 1–102(A)(5) (conduct that is prejudicial to the administration of justice). *Compare People v. Susman*, 196 Colo. 458, 587 P.2d 782 (1978), *with People v. Klein*, 179 Colo. 408, 500 P.2d 1181 (1972). Marital difficulties, computer problems, and partnership disputes were offered by way of mitigation. In our view, nothing in the record serves to mitigate or justify the violations of professional responsibility that the respondent committed.

Accordingly, given the severity of the ethical violations committed by the respondent, but considering the absence of previous discipline, the court orders that the respondent be suspended for three years and that costs in the amount of $2,828.04 be assessed against the respondent and paid to the Supreme Court Grievance Committee, 600 17th Street, Suite 500 South, Denver, Colorado 80202, within sixty days from the date of the announcement of this opinion.

---

4. DR 9–102(B)(4) provides:
(B) A lawyer shall:
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other property in the possession of the lawyer which the client is entitled to receive.