The PEOPLE of the State of Colorado, Complainant,

v.

Stephen T. SUSMAN, Attorney–Respondent.

No. 87SA159.

Supreme Court of Colorado, En Banc.

Dec. 21, 1987.

Linda S. Donnelly, Disciplinary Prosecutor, Susan L. Fralick, Deputy Disciplinary Prosecutor, Denver, for complainant.

Pryor, Carney and Johnson, P.C., W. Randolph Barnhart, Englewood, for attorney-respondent.

VOLLACK, Justice.

The respondent, Stephen T. Susman, is an attorney licensed to practice law in the State of Colorado. He is subject to the jurisdiction of this court and its Grievance Committee, and is before us now on two counts of professional misconduct.

## I.

On April 11, 1987, a hearing panel of the Supreme Court Grievance Committee reviewed the findings and approved the recommendations of the hearing board, which had recommended that the attorney-respondent be suspended from the practice of law for a period of thirty months; that he be required to undergo a complete mental health examination by a licensed mental health professional satisfactory to the Grievance Committee before reinstatement, and that he be assessed the costs of these proceedings.

The panel's recommendations were adopted from the findings and recommendations of the hearing board. The hearing board found that it had been established by clear and convincing evidence that the respondent violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice) and C.R.C.P. 241.6(4) (gross negligence). His misconduct also rendered him in violation of DR 1–102(A)(1) (violation of a disciplinary rule) and C.R.C.P. 241.6(1) (professional misconduct). However, the board held that there was not clear and convincing evidence to establish that the respondent had violated DR 6–101(A)(2) (inadequate preparation of a legal matter) or DR 7–101(A)(1) or (A)(3) (failure to seek client's lawful objectives or causing prejudice or damage to the client). This conclusion was based in part on a lack of evidence that the respondent's actions were intentional, and also the distinction between his failure to handle the matter entrusted to him, as distinguished from handling a matter without adequate preparation. The disciplinary prosecutor and the respondent's attorney were afforded the opportunity to file exceptions to the findings, conclusions and recommendations of the hearing board and panel; exceptions have been timely filed.

We accept and approve the recommendations of the hearing panel. Accordingly, we order that Stephen T. Susman be suspended from the practice of law for a period óf thirty months from the date of this opinion, that he be required to undergo a complete mental health examination by a licensed mental health professional who is satisfactory to the Grievance Committee before reinstatement, and that he be assessed the costs of these proceedings in the amount of $1,405.82.

This disciplinary proceeding arises from two unrelated complaints filed against the respondent. The first complaint involves Susman's professional misconduct in his representation of Messrs. Bassett and Thompson. The second complaint arises from Susman's actions as an attorney and a Colorado real estate broker.

## II.

### *The Bassett–Thompson Matter*

The respondent was hired by two clients, Messrs. Bassett and Thompson, to defend a suit for attorney fees brought against them by their former attorneys. The defendants-clients admitted to the respondent that they owed money to their former attorneys, but believed that the amount sought ($11,500), exceeded the amount properly owing by $2,000 to $3,000. The respondent immediately filed an answer on behalf of his clients and began negotiations with the plaintiffs' counsel. During these negotiations, the parties came within $500 of settlement; the plaintiffs offered to accept a payment of $9,500 and the defendants were willing to pay no more than $9,000. The

respondent's performance to this point was satisfactory and diligent.

When settlement efforts failed, the plaintiffs issued interrogatories to the defendants. The respondent forwarded the interrogatories to his clients with instructions to answer and return them to him within the time allowed. Neither Thompson (a realtor) nor Bassett (a California lawyer) responded to the discovery request in a timely manner, but the respondent did receive their responses before the plaintiffs sought orders compelling discovery and sanctions.

Over the next four months, the respondent completely failed to defend the matter. Susman would periodically tell Thompson that little was happening in the matter; this was the only action taken by the respondent. During this four-month period, the plaintiffs filed a motion to compel discovery. The respondent failed to respond and this motion was granted. The plaintiffs then filed a motion for summary judgment for failure to make discovery following an order to compel; the respondent again failed to respond and, as a result, summary judgment was entered against the defendants. Despite proper notice to the respondent of the hearings at which relief was granted to the plaintiffs, Susman failed to respond and failed to participate in the litigation. He made no efforts to set aside the judgment, or to promptly notify his clients of the judgment after he received actual notice.

A few days after learning of the judgment that had been entered, the respondent advised Thompson that the case had been resolved against him and Bassett. Susman did not explain to Thompson that this resolution of the case was a result of his neglect of the matter, nor did he explain the possible consequences of the judgment. Thompson's bank accounts were garnished the next day, resulting in embarrassment to him and disruption of his business affairs. Thompson consulted another attorney, who reviewed the file and explained to him what had happened. Thompson's new counsel also filed a request for investigation of this matter with the Grievance Committee.

Thompson confronted the respondent concerning his neglect of the case. The respondent eventually agreed to advance his own funds to reimburse Thompson for the difference between the $9,000 the defendants had been willing to pay, and the amount of the judgment, (over $12,000, including sanctions awarded by the court). The matter was thus resolved to the general satisfaction of Thompson and Bassett, due to the respondent's efforts and the cash he contributed toward the settlement.

The respondent generally admitted the facts set forth above and admitted to conduct in violation of DR 6–101(A)(3).[1] His explanation to the hearing board was that he "just froze" in regards to this isolated matter. The complaint alleged, and the special prosecutor argued, that the respondent's acts and omissions resulted in violations of DR 1–102(A)(5),[2] C.R.C.P. 241.6(4),[3] DR 1–102(A)(1),[4] and C.R.C.P. 241.6(1).[5]

1. **DR 6–101  Failing to Act Competently.**
   (A) A lawyer shall not:

   .      .      .      .      .

   (3) Neglect a legal matter entrusted to him.
2. **DR 1–102  Misconduct.**
   (A) A lawyer shall not:

   .      .      .      .      .

   (5) Engage in conduct that is prejudicial to the administration of justice.
3. **Rule 241.6.  Grounds for Discipline**
   Misconduct by a lawyer, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship:

   .      .      .      .      .

   (4) Any act or omission which constitutes gross negligence, if committed by a lawyer in his capacity as a lawyer; ...

4. **DR 1–102  Misconduct.**
   (A) A lawyer shall not:
   (1) Violate a Disciplinary Rule.

5. **Rule 241.6.  Grounds for Discipline**
   Misconduct by a lawyer, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship:
   (1) Any act or omission which violates the provisions of the Code of Professional Responsibility; ...

The hearing board agreed that the respondent had committed these violations. The complaint also alleged that the respondent had violated DR 6–101(A)(2),[6] and DR 7–101(A)(1) and (A)(3).[7] The hearing board held that violations of these two Disciplinary Rules had not been proven by clear and convincing evidence. The special prosecutor filed exceptions to these findings.

■ The hearing board's factual findings are binding on this court unless we conclude that the findings are clearly erroneous and unsupported by substantial evidence. *People v. Garnett,* 725 P.2d 1149 (Colo.1986).

The hearing board heard the evidence and concluded that the prosecutor had not met the burden of proof of clear and convincing evidence on certain of the alleged violations. The deputy disciplinary prosecutor asks this court to reverse this portion of the board's findings. Because the hearing board's findings are supported by the evidence, we decline to do so.

### III.

#### *The Jones Matter*

The second count of the complaint involved the respondent's activities as a Colorado real estate broker, where he was alleged to have violated DR 1–102(A)(4) (dishonesty, fraud, deceit and misrepresentation) and C.R.C.P. 241.6(3) (acts or admissions violating the highest standards of honesty, justice, and morality). The hearing board found that the following facts were established by clear and convincing evidence.

In June 1984, the respondent was a licensed real estate broker in Denver, Colorado. He was approached by Harold Reed,

a real estate developer and real estate salesperson, who wished to operate under the respondent's brokerage license. Colorado law requires that every real estate salesperson must work under the license of a real estate broker. The broker is legally responsible for supervising every salesperson operating under his or her broker's license. Mr. Reed was a client of the respondent's law practice, and he wanted access to the real estate multiple list facility for his real estate development operations. He persuaded the respondent to let him operate as a real estate salesperson under the respondent's brokerage license, on extremely favorable commission split terms.

Reed recruited another licensed real estate salesperson, Jeanette Jones, to work under the respondent's license. Jones did not talk with the respondent before joining the firm in July 1984, but she, the respondent, and Reed agreed to conduct a real estate business in Aurora under the name of "Financed Realty, Inc." The respondent did the preliminary work to establish the corporation, but never filed articles of incorporation. With Susman's knowledge and assistance, Jones took steps to transfer his Denver brokerage address to Aurora, where the business was being conducted. At the same time, she terminated her sales relationship with another Aurora broker and brought her license and "pocket card" to the respondent for transfer to his brokerage on the records of the licensing agency, the Colorado Real Estate Commission.

Within a few weeks, Jones became disenchanted with Reed and expressed those feelings to the respondent. During this time, she also asked the respondent about

---

6. **DR 6–101 Failing to Act Competently.**
   (A) A lawyer shall not:

   .    .    .    .

   (2) Handle a legal matter without preparation adequate in the circumstances.

7. **DR 7–101 Representing a Client Zealously.**
   (A) A lawyer shall not intentionally:
   (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, how-

ever, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

.    .    .    .    .

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).

the transfer of her license and the re-issuance of her pocket card. She testified without contradiction that the respondent assured her that the transfer was being handled, and later advised her that the transfer was complete.

At the beginning of August 1984, Jones quit Financed Realty, Inc. and went to the respondent's office to retrieve her real estate license and pocket card; she then discovered that the license and card had never been transfered from her previous broker. Apparently, Jones was angry with Reed rather than the respondent, and she brought to the attention of the Colorado Real Estate Commission the fact that Reed was operating an unlicensed real estate brokerage in Aurora. As a result, the Real Estate Commission's investigation led the Commission to institute disciplinary proceedings against the respondent for his failure to adequately supervise his salesperson (Reed), and for maintaining a brokerage with an unlicensed name and address.

The respondent negotiated a stipulation with the Real Estate Commission's counsel in which he accepted the discipline first proposed by the Commission: a ninety-day suspension of his broker's license. The stipulation included a statement of the respondent's underlying conduct as a broker.

The Real Estate Commission routinely refers to this court's Grievance Committee any discipline involving a broker who is also licensed to practice law. The conduct for which the respondent was disciplined by the Real Estate Commission would not normally be cause for independent discipline of the respondent as a lawyer. However, the inquiry panel of the Grievance Committee referred this matter for formal proceedings because of the respondent's preparation of a stipulation setting forth facts that were substantially different from the facts alleged by the Real Estate Commission when it initiated its disciplinary proceedings.

As a result of the Grievance Committee's further investigation, two instances of misconduct were alleged: (1) the respondent's repeated false assurances to Jones that he was transferring her license and pocket card to his brokerage, and (2) the respondent's involvement, in a deceptive way, in the confusion surrounding Financed Realty, Inc.'s application for membership in the Aurora Board of Realtors. These acts or omissions of the respondent were claimed to be in violation of DR 1–102(A)(4) [8] and C.R.C.P. 241.6(3).[9]

As to the first instance of misconduct, the hearing board found that it was established, by clear and convincing evidence, that the respondent lied to Jones concerning the progress and completion of transfer of her salesperson's license. This conduct "involv[ed] dishonesty, fraud, deceit, or misrepresentation" within the meaning of DR 1–102(A)(4), and violated "the highest standards of honesty, justice, or morality" within the meaning of C.R.C.P. 241.6(3). This is true even though Ms. Jones was not the respondent's client, but was instead relying on him as her broker, and as a lawyer for the real estate agency itself.

As to the second area of misconduct, the hearing board did not find by clear and convincing evidence that the respondent was involved in handwritten alterations to the Aurora Board of Realtors' application. The board found the testimony on this matter to be inconsistent and inconclusive. The hearing board also could not find the respondent guilty of misconduct merely by obtaining the acceptance of the Real Estate Commission of his version of the contested facts into the stipulation negotiated between them.

8. **DR 1–102 Misconduct.**
   (A) A lawyer shall not:
   .        .        .        .        .
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

9. **Rule 241.6. Grounds for Discipline**
   Misconduct by a lawyer, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship:
   .        .        .        .        .
   (3) Any act or omission which violates the highest standards of honesty, justice, or morality; ...

## IV.

In determining a proper sanction, we have considered the ABA Standards for Imposing Lawyer Sanctions, Rule 4.42, which provides that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or when a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

The respondent contends that the hearing panel's recommendation of a thirty-month suspension is unduly harsh. We disagree. We acknowledge that in certain other cases, we have found a thirty-day suspension to be appropriate when a respondent-attorney has neglected legal matters. *See People v. Holmes*, 731 P.2d 677 (Colo.1987). The significant aggravating factors present in this case, however, justify a different result. *See People v. Yost*, 729 P.2d 348 (Colo.1986) (three-year suspension appropriate because defendant neglected entrusted legal matters, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and engaged in conduct prejudicial to the administration of justice).

Aggravating factors [10] which were considered by the hearing board included the respondent's complete failure to defend his clients' case despite regular contacts with the clients and repeated notice of his delinquency. Another factor was the fundamental similarities of the misconduct in each count. In both cases, the respondent led clients or associates to believe that matters were being properly handled, even though he knew this was not true.

The strongest aggravating factor was found to be the respondent's prior disciplinary offenses; Susman had been suspended in 1978 for neglect of legal matters entrusted to him. *See People v. Susman*, 196 Colo. 458, 587 P.2d 782 (1978). The prior suspension made reference to another earlier discipline imposed on the respondent for neglecting legal matters entrusted to him. The one mitigating factor found by the board was that the respondent was not acting with a venal or selfish motive.[11]

The respondent knew he was not defending the legal interests of Messrs. Thompson and Bassett, and did nothing to remedy the situation, despite repeated notice. The respondent also engaged in misconduct in handling Ms. Jones real estate license and the affairs of the purported real estate company to be established in Aurora. The respondent failed to perform work or attend to matters entrusted to him. Review of the misconduct underlying these two counts leads us to the conclusion that the respondent has unquestionably exhibited a pattern of misconduct. He led his clients or associates to believe that matters were being properly and diligently handled, and even after his neglect he failed to take steps to correct matters or advise clients of his responsibility for the result. His negligence is further aggravated by his substantial experience in the practice of law.

We agree with the board's finding of aggravating and mitigating factors as described in ABA Standards 9.22 and 9.32. We approve the Grievance Committee's recommendations and order that the respondent be suspended from the practice of law for a period of thirty months from the date of this opinion, and that he be required to undergo a complete mental health examination by a licensed mental health professional satisfactory to the Grievance Committee

**10.** 9.22 *Factors which may be considered in aggravation.* Aggravating factors include:
  (a) prior disciplinary offenses;

  (c) a pattern of misconduct;
  (d) multiple offenses;
  (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

  (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

  (i) substantial experience in the practice of law; ...

**11.** 9.32 *Factors which may be considered in mitigation.* Mitigating factors include;

  (b) absence of a dishonest or selfish motive;
...

prior to reinstatement. We further order that he pay the costs of these proceedings in the amount of $1,405.82 within thirty days to the Colorado Supreme Court Grievance Committee, 600—17th Street, Suite 510S, Denver, Colorado 80202.

KIRSHBAUM, J., does not participate.