**The PEOPLE of the State of Colorado, Complainant,**

v.

**Kelly A. REEVES, Attorney–Respondent.**

**No. 88SA180.**

Supreme Court of Colorado, En Banc.

Dec. 19, 1988.

Linda Donnelly, Disciplinary Counsel, Denver, for complainant.

Kelly A. Reeves, pro se.

VOLLACK, Justice.

In this disciplinary proceeding, a divided hearing panel of the Supreme Court Grievance Committee recommended that respondent Kelly A. Reeves be suspended for one year and one day. Two members dissented, one in favor of disbarment, one in favor of a three year suspension. The panel also recommended that Reeves be ordered to make restitution in the amount of $4,720. The recommendation was based on repeated incidents of professional misconduct, including neglect and misrepresentation. We believe that suspension for one year and one day is an inappropriate sanction. In our view, disbarment is appropriate in this case. Therefore, we reject the recommendation of the hearing panel and direct that the respondent be disbarred and that he be ordered to pay the costs of these proceedings.

I.

Respondent Kelly Reeves was admitted to the bar of the Supreme Court of the State of Colorado in 1985, and is subject to the jurisdiction of this court and its Grievance Committee.

This case represents a consolidation of two formal complaints based on twelve separate charges. The respondent failed to appear at the hearing and has been suspended from the practice of law as of February 5, 1988. Because orders of default were entered in those complaints, the facts and charges pled in the complaints must be deemed to be admitted by the respondent. *People v. Richards*, 748 P.2d 341, 347 (Colo.1987); C.R.C.P. 241.13(b).

The respondent entered into an office sharing agreement with other lawyers in the fall of 1985. He failed to pay his share of the rent, employee wages, telephone and

other office expenses. Checks which he wrote to the lawyers to cover these expenses were returned for insufficient funds. He explained to the Grievance Committee in his response to the request for investigation that his funds became insufficient because he had received an unusually high number of insufficient checks from his clients. This explanation was later shown to be false.

The respondent promised to appear on April 23, 1987, at a hearing on behalf of his office mate's client, pursuant to C.R.C.P. 69, to determine what assets a particular judgment debtor owned. The judgment debtor appeared but the respondent did not. The respondent then misrepresented to his office mate that he had appeared at the hearing. As a result of the respondent's failure to appear, the judgment debtor's obligation to appear was discharged.

The respondent was paid $400 on September 24, 1986, to represent Caryl Cardoza in a dissolution of marriage action. The action was relatively simple, inasmuch as there were no children, real estate, or substantial assets involved. The respondent timely filed the dissolution petition. Ms. Cardoza called the respondent on December 18, 1986, telling him that her husband had taken some of her personal property. The respondent promised to secure the return of her property. He told her that a hearing on the matter was scheduled for February 24, 1987. On February 20, he told her that the hearing had been cancelled by her husband's attorney. In fact, the respondent had never set a hearing for February 24. He made no effort to recover her property until July 1, 1987, when he filed a verified motion for contempt. He did not attempt to obtain a contempt citation or set a date for hearing on the motion. On April 20, the respondent filed a motion for temporary orders to be heard on May 6. The respondent indicated to the court that the May 6 date had been cleared with opposing counsel. In fact, the respondent had not cleared the date with opposing counsel, and opposing counsel was not available on that date. Opposing counsel repeatedly attempted to contact the respondent, who failed to return his telephone calls or correspondence. Neither party appeared at the May 6 hearing, and the hearing date had to be rescheduled. Other than preparing a settlement agreement that was rejected, the respondent did no work on Ms. Cardoza's dissolution action after April 20. After several requests to complete her divorce were ignored, Ms. Cardoza retained another attorney in October 1987 to finalize her divorce. The respondent refunded no portion of his unearned fee to Ms. Cardoza.

The respondent was paid $800 to represent Ms. Cardoza in a bankruptcy matter. He promised to file her bankruptcy petition by February 6, 1987. He misrepresented to her that he had timely filed the petition. Because the respondent failed to file the petition by that date, creditors were able to enter judgments against her and to garnish approximately $300 from her wages. She was forced to hire another attorney and to retrieve her file from the respondent. The respondent promised to refund $400 to Ms. Cardoza, but failed to do so.

The respondent was charged with driving under the influence of alcohol after crashing into two parked cars on December 12, 1986, while driving someone else's car. On January 7, 1987, he pled guilty to the reduced charge of driving while ability impaired. He was sentenced to ninety days in jail, one year of probation, and a fine of $430 plus court costs. He was also ordered to pay restitution to the owners of the three cars he damaged, to make the insurance deductible payments for these owners, and to enter an alcohol education program. The jail sentence was suspended except as to the two days he had already served, pending completion of the alcohol education program.

The respondent failed to enter an alcohol education program for more than four months. He also failed to pay restitution to the owners of the three cars, failed to contact a public service officer, and failed to keep two appointments with his probation officer. As a result, the original eighty-eight day jail sentence was reimposed but stayed for approximately three weeks to allow the respondent to comply with the conditions of probation. The re-

spondent sought to persuade the court not to impose the jail sentence by claiming that being unable to work would cause "his house" to "go into foreclosure." This was a false statement; the respondent rented his residence. The respondent finally complied with all of the probation conditions almost seven months after the guilty plea was entered, and never served the original jail sentence.

The respondent was paid $2,000 in September and October 1986 to represent John and Victoria Jones. The Jones had operated a printing business in Kansas that had experienced financial difficulties. Respondent briefly met with them twice. He outlined three possible business options for the Jones to consider. One of these options would have been a fraudulent transfer in violation of section 548 of the bankruptcy code. The respondent did no further work for the Jones from October 1, 1986, to mid-January 1987, despite more than fifty phone calls from them. On January 21, 1987, the Jones received notice of a lawsuit in Kansas by one of their creditors. Trial was set for March 9, 1987. The respondent told the Jones that the notice had been improperly served and that he would arrange for the lawsuit to be thrown out. He did not contact the Kansas court. After a week of repeated phone calls from the Jones, the respondent on February 27 told them a Kansas attorney would have to be hired. Although the Jones obtained the services of a Kansas attorney on the eve of trial, default judgment of $48,869.52 was entered against them. The respondent never suggested that the Jones should try to set aside the judgment. Despite written demand from the Jones, the respondent never returned any portion of the unused $2,000 fee.

The respondent was paid $700 to represent Karen DeCastro in a dissolution of marriage action. He filed the petition for dissolution and had the husband served with the petition and a temporary restraining order on January 30, 1987, but did no further work on her case. Ms. DeCastro tried repeatedly to contact the respondent with no success. She learned from the respondent's former secretary that he had

vacated the office on April 6, 1987. He gave no notice of his departure, took his records with him, and left no forwarding address. She filed a grievance with the Grievance Committee on April 23, 1987. She withdrew her grievance in May because the respondent contacted her and said he would complete her divorce for an additional $120, and because he threatened to sue her for slander if she did not withdraw her grievance. Ms. DeCastro paid the respondent the additional $120. He did nothing further on her case, despite repeated telephone calls. In August 1987 she reinstated her grievance with the Grievance Committee. In September 1987 she retained another attorney to complete her divorce. The respondent returned none of the unearned fee to Ms. DeCastro.

The respondent failed to cooperate with the Grievance Committee. He agreed to meet with an investigator from the committee concerning a grievance filed by the owner of one of the cars the respondent struck on December 12, 1986, but failed to keep an appointment on October 21, 1987, claiming illness, on November 4, 1987, claiming a need to consult his attorney, and on November 6, for no reason. An attorney friend of the respondent agreed to help schedule a date for the respondent to meet with the investigator, but the respondent failed to appear on the agreed date and refused to return the investigator's telephone calls. In addition, he failed to respond to inquiries of the Grievance Committee concerning complaints of Ms. Cardoza, the Jones, and Ms. DeCastro.

A hearing on the two formal complaints was held on February 12, 1988. The hearing board presented its findings and recommendation to the hearing panel of the Grievance Committee on April 30, 1988. The hearing panel on the same day approved the recommendation of the hearing board of a suspension for one year and one day. Two members dissented. One member would have disbarred the respondent, while another member would have imposed a three year suspension.

The hearing board found by clear and convincing evidence that the respondent vi-

olated the following disciplinary rules of the Code of Professional Responsibility: DR 1–102(A)(1) (violating a disciplinary rule); DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice); DR 6–101(A)(3) (neglecting a legal matter entrusted to a lawyer); DR 7–101(A)(3) (prejudicing a client during the course of a professional relationship); DR 7–102(A)(7) (counseling a client in conduct the lawyer knows to be illegal or fraudulent); and DR 9–102(B)(4) (failing to promptly pay or deliver funds to the client as requested); and C.R.C.P. 241.6(7) (failing to respond to a request by the Grievance Committee without good cause or obstructing the committee in the performance of its duties). The hearing board concluded that discipline was appropriate under C.R.C.P. 241.6. It recognized that the respondent's conduct might well warrant disbarment, but refused to make such a recommendation. Despite the Disciplinary Counsel's recommendation of disbarment, the hearing board concluded that disbarment was not the appropriate sanction because the evidence was inconclusive that the respondent had abandoned his practice, because he was relatively new to the practice of law, and because the harm that he caused to his clients was relatively minor. It also noted that "there is some indication in the record that he has a problem with alcohol abuse." It was reluctant to impose disbarment on a respondent who did not appear at the hearing and who had no prior discipline.

The Disciplinary Counsel raised a number of exceptions to the findings of fact and recommendations of the hearing panel. First, she noted that there were twelve counts filed in the two complaints, that the charges were serious, that the respondent failed to cooperate with the Grievance Committee, and that he neither appeared at the hearing nor sent a representative. The prosecution took exception to the finding that the respondent had not abandoned his practice. She argued that this fact must be deemed to be admitted by the respondent's failure to appear at the grievance hearing. She also took exception to the recommendation of suspension for one year and one day as unduly lenient in the absence of factors to mitigate or explain his behavior.

## II.

The Disciplinary Counsel argues that disbarment is the appropriate sanction in this case because the respondent's conduct demonstrates abandonment of the practice, knowing failure to perform services for a client, and a pattern of neglect, all of which caused potentially serious injury to clients. We agree.

Section 4.41 of the ABA Standards for Imposing Lawyer Sanctions (1986) recommends disbarment when a lawyer causes serious or potentially serious injury to a client as the result of (a) abandoning the practice, (b) knowingly failing to perform services for a client; or (c) engaging in a pattern of neglect with respect to a client matter.

The facts indicate that the respondent abandoned his practice. On April 6, 1987, while the cases of Ms. Cardoza, the Jones, and Ms. DeCastro were not completed, the respondent vacated his office without notice, taking his files and leaving no forwarding address. Although he contacted Ms. DeCastro to ask for more money and threaten to prosecute her for registering a grievance, he did no further work for her or the other complaining parties once he collected the additional money from Ms. DeCastro. He failed to respond to his clients' numerous attempts to inquire as to his progress on their cases. They were compelled to hire other attorneys to complete their cases. The respondent failed to return files and refused to refund unused fees. After he left his business address, he failed to file a change of address with the office of the clerk of this court as required by C.R.C.P. 227(A)(2)(b). Certified mail sent to his home and last known business address were returned as "moved, left no address" and "address unknown." He made no attempt to contact his clients, opposing counsel, the hearing board, or this

court. His present whereabouts are unknown.

This case is similar to *People v. Whiting*, 189 Colo. 253, 539 P.2d 128 (1975). In that case, the respondent was an attorney who had been practicing in Colorado for less than four years when he closed his office and left the community without advising his clients, the court, or opposing counsel, of eight pending cases. These clients were compelled to hire other attorneys to complete their cases. The respondent could not be located and mail was returned with no forwarding address. The respondent did not appear at the hearing of the Grievance Committee and was found in default. In adopting the findings of the hearing panel that the respondent be disbarred, we found that the respondent had engaged in "mass abandonment of the interests of his entire clientele which indicates a complete lack of responsibility on the part of the respondent." *Id.* at 255, 539 P.2d at 129.

The respondent caused serious harm to his clients by retaining more than $4,000 in fees after performing only the most perfunctory of legal tasks while failing to perform the jobs he had been hired to do. In the Jones' case, his failure to act and announcement on the eve of trial that he could not represent them in Kansas indirectly caused them to suffer a $48,000 default judgment. Ms. Cardoza lost $300 as a result of his failure to file a bankruptcy petition. He made no effort to tell his clients that he would be doing no more work for them, failed to find other attorneys to represent his clients, and refused to return any of the unused fees they had paid him. Under these circumstances, we must conclude that the harm to his clients was serious. *See People v. Lyons*, 762 P.2d 143, 145 (Colo.1988) (abandonment of one client's dissolution of marriage petition for two years caused serious or potentially serious injury to client); *People v. James*, 731 P.2d 698, 700 (Colo.1987) (failure of attorney to protect legal interests of one client caused serious damage to client).

We conclude that the respondent abandoned his practice and caused serious or potentially serious injury to his clients under section 4.41(a) of the ABA Standards for Imposing Lawyer Sanctions. We also recognize that the respondent's conduct shows a knowing failure to perform services that caused serious or potentially serious injury to his clients. The respondent never completed divorce proceedings for Ms. Cardoza or Ms. DeCastro. He never completed bankruptcy proceedings for Ms. Cardoza. He never contested the service of notice in the Jones' trial in Kansas. In all three cases, the client made repeated attempts to contact the respondent concerning the progress of their cases. Under these circumstances we must conclude that his failure to perform services was knowing. In addition, we recognize that the respondent engaged in a pattern of neglect that caused serious or potentially serious injury to his clients.

The hearing board found as mitigating factors the respondent's absence of prior disciplinary record, personal or emotional problems based on the "indication" that the respondent "has a problem with alcohol abuse," and inexperience in the practice of law. ABA Standards for Imposing Lawyer Sanctions § 9.32(a), (c) & (f) (1986). They also apparently found that the respondent's failure to cooperate and failure to appear before the hearing board would be considered as mitigating rather than aggravating factors.

We find none of the mitigating factors to be present. The mitigating effect of the respondent's lack of prior disciplinary record is negated by the continuing course of conduct that began at the time he was licensed to practice law. It is difficult to understand the hearing board's basis for concluding that the respondent had a personal problem based on alcohol abuse. Other than a guilty plea to driving while ability impaired, the record makes no mention of alcohol abuse. We find the respondent's inexperience in the practice of law did not contribute in any meaningful way to his present difficulties. The complaints were based on failure to perform the most basic of legal tasks, not on inability to comprehend the legal issues surrounding those tasks. Finally, we agree with the Disciplinary Counsel that the respondent's

failure to cooperate and failure to appear at the hearing must be considered aggravating factors.

A number of aggravating factors are present. They include a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with orders of the disciplinary agency, submission of false statements during the disciplinary process, refusal to acknowledge wrongful nature of conduct, and indifference to making restitution. *See* ABA Standards for Imposing Lawyer Sanctions § 9.22(c), (d), (e), (f), (g), & (j) (1986).

## IV.

We conclude that, because the respondent abandoned his practice and because of the presence of many aggravating factors, disbarment is the appropriate sanction in this case. It is hereby ordered that Kelly Reeves is disbarred from the practice of law and that his name be stricken from the role of attorneys licensed to practice in this state, and that he pay the cost of these proceedings in the amount of $197.69 and restitution in the amount of $4,720 to the Colorado Supreme Court Grievance Committee, 600 17th Street, Suite 500S, Denver, Colorado 80202, within sixty days from the date of the announcement of this opinion.