The PEOPLE of the State of Colorado, Complainant,

v.

Robert James SCHUBERT, Attorney-Respondent.

No. 89SA380.

Supreme Court of Colorado, En Banc.

Oct. 15, 1990.

Rehearing Denied Nov. 13, 1990.

---

Linda Donnelly, Disciplinary Counsel, Susan L. Fralick, Asst. Disciplinary Counsel, Denver, for complainant.

Duane Cole, Fort Collins, for respondent.

PER CURIAM.

In this attorney discipline case, a hearing board of the Supreme Court Grievance Committee found that the respondent, Robert James Schubert, had violated several provisions of the Code of Professional Responsibility. The hearing board recommended that the respondent be suspended from the practice of law for a period of two years and that reinstatement be conditioned on a showing of recovery from cocaine addiction and completion of certain educational requirements. The hearing panel approved the report of the hearing board, although it registered disagreement with one finding and one ruling of the board.[1] We are persuaded that a more severe sanction is required and determine that the respondent should be suspended from the practice of law for a period of three years, the maximum permitted by C.R.C.P. 241.7(2).

I.

The respondent was admitted to the bar of this court on May 29, 1985, and is subject to the jurisdiction of this court and its grievance committee. He has no prior disciplinary record. The misconduct at issue arose principally out of the respondent's representation of Charlotte Ortega in a workers' compensation case.

A.

The hearing board found the relevant facts set forth below by clear and convincing evidence. On March 4, 1988, after achieving a settlement of Ortega's case by

---

1. One of the members of the hearing panel also favored a longer suspension.

competent and effective representation, the respondent received a check for the $30,000 settlement amount, payable to Ortega. Ortega gave the respondent permission to endorse her name on the check. Prior to receiving the settlement check, the respondent wrote a check on his trust account to Ortega in the amount of $22,500 for her share of the settlement. The two agreed that Ortega would not deposit the respondent's check until March 7 to allow the respondent time to deposit the $30,000 check into his trust account. There were adequate funds in the trust account on March 7 and 8 to pay the check to Ortega, but on March 9, when Ortega attempted to deposit the check, there were insufficient funds to cover it.

The respondent's problems in the misuse of his trust account began with his use of cocaine commencing in June 1987. His cocaine use progressed to a severe and costly addiction by October or November of that year. Disintegration of the respondent's personal and professional life followed, and by January 1988 the respondent had no real idea as to the balance of funds kept by him in any account. He began to use his trust account to pay both personal and business obligations. In March and April of 1988 the respondent wrote four checks for personal expenses, and also wrote five insufficient funds checks, all drawn on his trust account. The insufficient fund checks have been paid.

The respondent first learned of the problem with Ortega's check on March 17, 1988, when he contacted his bank in an effort to reconcile his account. Upon learning that the $22,500 check had not cleared, the respondent called Ortega and was told that she had tried to deposit it but that there were insufficient funds to cover it. This resulted because the respondent had written a number of other checks on his trust account beginning on March 4. In doing so he was unaware that he was spending money belonging to Ortega.

The respondent and Ortega were friends and had a mutually supportive relationship. They agreed on March 17 that the respondent would pay Ortega $17,500 on that day and that the remaining $5,000 owed to her as proceeds of the workers' compensation settlement would be a loan. On March 28, the respondent asked Ortega for another loan of $4,000 and received that amount from her. In negotiating these loans the respondent did not make adequate disclosure as required by the Code of Professional Responsibility. *See* DR 5–104(A). On April 5, 1988, Ortega went to the respondent's office, and the respondent executed a promissory note for the $9,000 previously borrowed plus ten percent interest payable thirty days after demand. The respondent at this time was not answering his telephone calls, and was hardly functioning in either his professional or personal activities.

Ortega became concerned about payment of the note and retained another attorney to collect. The attorney brought suit against the respondent, who paid the full amount of principal and interest on July 8, 1988. The attorney also referred the matter to the district attorney's office, which charged the respondent with felony theft and forgery. The respondent was found not guilty of the criminal charges after a jury trial in October 1988. Ortega also filed a request for investigation with the grievance committee, and disciplinary proceedings commenced on July 15, 1988. The respondent was temporarily suspended from the practice of law by this court on July 28, 1988, pursuant to C.R.C.P. 241.8, and remains suspended awaiting the completion of these proceedings.

On July 8, 1988, the same day that he repaid Ortega, the respondent voluntarily entered an inpatient drug rehabilitation clinic and remained there almost one month. He then continued in an outpatient program, joined Alcoholics Anonymous and Narcotics Anonymous, became a counselor at the clinic, and has successfully passed all random urine screens. The board found that the respondent is highly motivated in his recovery program, but it is too soon to say with any degree of certainty that he will not relapse.

## B.

The original two-count complaint in this disciplinary proceeding was filed on July 15, 1988. On August 24, 1988, the respondent filed his answer, raising the affirmative defense of substance addiction. On February 8, 1989, less than three weeks before the scheduled hearing date, the disciplinary counsel moved to file an amended complaint charging that the respondent violated the Code of Professional Responsibility by using and becoming addicted to cocaine. The presiding officer of the hearing board granted the disciplinary counsel leave to file the amended complaint on February 10, 1989. The respondent objected to the presiding officer's ruling on the ground that it left him only thirteen days to investigate the charges. The presiding officer ordered the parties to file memoranda on the question of whether it was appropriate to allow the disciplinary counsel to file an amended complaint. The memoranda on this issue were due on March 29, 1989, the last day of the hearings.

Hearings were held on February 23 and 24 and on March 28 and 29, 1989. The hearing board received testimony from the respondent, Ortega, and a bank officer on the transactions and the status of the respondent's bank accounts. Several witnesses testified about the respondent's progress towards overcoming his drug abuse problem. After hearing testimony from the respondent and witnesses called by the disciplinary counsel concerning the respondent's cocaine addiction, the hearing board reversed the presiding officer's order allowing the disciplinary counsel to file the amended complaint on the grounds that it was untimely, and unfair to the respondent. The hearing board reported its findings of fact, conclusions and recommendations on August 3, 1989.

## II.

The hearing board concluded that the respondent violated C.R.C.P. 241.6(1) (violation of Code of Professional Responsibility), C.R.C.P. 241.6(2) (violation of accepted rules or standards of legal ethics), C.R.C.P. 241.6(3) (violation of highest standards of honesty, justice, or morality) and DR 1–102(A)(4) [Model Rules of Professional Conduct Rule 8.4(c) (1984) (hereinafter "Model Rules")] (conduct including dishonesty, fraud, deceit, or misrepresentation) by failing to preserve his client's property and using his client's property inappropriately. The hearing board found dishonesty and lack of candor in the respondent's use of his relationship with Ortega to borrow money. The board also concluded that the respondent took advantage of his client through "sloppy" handling of business and personal accounts and that he abused a controlled substance, all in violation of C.R. C.P. 241.6(1), (2) and (3) and DR 1–102(A)(6) [no corresponding Model Rule] (conduct adversely reflecting on fitness to practice law). The hearing board also concluded that the respondent violated C.R.C.P. 241.-6(1) and (2) and DR 5–104(A) [Model Rule 1.8(a)] (entering into business transactions with client, absent consent after full disclosure) by borrowing money from Ortega on at least two occasions without explanation of the personal conflict, risk, or ramifications of the transaction. The board further concluded that the respondent violated DR 9–102(B)(4) [Model Rule 1.15(b)] (lawyer shall promptly pay to client funds client is entitled to receive) in connection with payment of the $22,500 to Ortega. All of the foregoing constituted violation of disciplinary rules in violation of DR 1–102(A)(1) [Model Rule 8.4(a)]. The hearing board recommended that the respondent receive a two year suspension from the practice of law and pay the costs of the proceeding. In addition, the hearing board proposed, as prerequisites to applying for reinstatement, that the respondent establish his continued drug-free recovery from cocaine addiction and obtain education about the ethical business management of law practice. A hearing panel of the grievance committee approved the hearing board's findings and recommendations with the exception of the hearing board's finding that the respondent did not act knowingly and its ruling striking the amended complaint.

The respondent filed exceptions to the hearing panel's report, asserting that the

panel erred by disagreeing with part of the hearing board's report without examining the record and that the recommended sanction was too severe. The respondent contended that the sanction did not reflect the mitigating considerations that the respondent was temporarily suspended based on allegations of conversion of client funds but had been acquitted of that charge after trial and that the hearing board had also specifically found that the respondent had not knowingly converted client funds. The disciplinary counsel also filed exceptions, contending that the hearing board erred in striking the amended complaint, that the evidence failed to support the hearing board's conclusion that the respondent acted negligently rather than knowingly in "converting" Ortega's funds and that the recommendation of a two year suspension was too lenient.[2]

We first address the issue of striking the amended complaint and then consider the appropriateness of the recommended discipline.

### III.

In striking the amended complaint, the hearing board noted that the information concerning the additional charge of cocaine use and addiction was available to the disciplinary prosecutor in July 1988 when the original complaint was filed, that the amended complaint was filed shortly before the trial date, and that the late filing was fundamentally unfair to the respondent. The hearing board also noted that the evidence concerning the respondent's cocaine use and addiction was presented at the hearing and was used by the board in determining its recommendations. In fact, abuse of a controlled substance was specifically found by the hearing board as part of its finding and conclusion that the respondent engaged in conduct adversely reflecting on his fitness to practice law. We conclude that under these circumstances the hearing board act-

ed within its discretion in striking the amended complaint.

### IV.

Since the recommendation of the hearing panel is only advisory and not binding on this court we must independently decide the appropriate form of discipline suitable for the particular circumstances of this case. *People v. Davis,* 768 P.2d 1227, 1229 (Colo.1989). In light of the serious nature of the respondent's misconduct, the multiple violations of the Code of Professional Responsibility and concerns about respondent's drug rehabilitation, we conclude that a three year suspension is more appropriate. The respondent's commingling of funds and use of client funds for personal and business expenses are serious violations of the Code of Professional Responsibility. *People v. McGrath,* 780 P.2d 492, 493 (Colo.1989). Minimum standards of ethical conduct require a lawyer to segregate client funds from his own and not use the client trust account for personal, business, or operating expenses. *See People v. Harthun,* 197 Colo. 1, 4, 593 P.2d 324, 326 (Colo.1979). The respondent had no idea of the account balance in the trust fund and began, without specific knowledge, to spend money belonging to the client. Suspension is warranted because the respondent knew or should have known that he was dealing improperly with client funds and there was a potential for injury to the client. *See* ABA *Standards for Imposing Lawyer Sanctions* 4.12 (1986).

The disciplinary counsel urges that we disbar this respondent based on ABA Standard 4.11 (the knowing conversion of client funds). In this case, however, the hearing board specifically rejected the disciplinary counsel's argument that the respondent knowingly converted Ortega's funds to his own use. It found instead that the respondent "neither intended to misuse the funds nor was aware that the funds of

---

**2.** The disciplinary counsel also asserts that the hearing board erred in permitting a district judge to testify as a character witness for the respondent. Although we have recognized that it is generally improper for a judge to testify

voluntarily as a character witness, *People v. Morley,* 725 P.2d 510, 518 n. 3 (Colo.1986), we fail to see any prejudice from admission of the very limited character evidence offered by the judge in this case.

complaining witness were being misused." The hearing board found that the respondent's use of the trust account as a general operating account created the problem of inappropriate expenditures of client monies. These facts were found by clear and convincing evidence, are supported by substantial evidence, and therefore bind this court. *People v. Susman*, 747 P.2d 667, 670 (Colo.1987).[3] In the absence of knowing conversion, and taking into account the other circumstances of this case, disbarment is too severe. *See McGrath, supra* at 493 (suspension rather than disbarment because of "some lingering doubt about whether the respondent engaged in a *knowing* conversion of his client's funds"); *People v. Calvert*, 721 P.2d 1189, 1190 (Colo.1986) (suspension imposed when attorney commingled his own funds and client funds in trust account but never intended to convert any client funds and clients suffered no loss). Protection of the public interest generally requires disbarment for knowing conversion of client funds. The respondent's misuse of his client's funds, while serious and deserving of sanction, did not exhibit the dishonesty and breach of trust inherent in the knowing conversion of client funds.

The respondent's other misconduct falls into categories that generally call for suspension or reprimand. *See* ABA Standards 4.32 (suspension generally appropriate when lawyer knows of a conflict of interest and does not fully disclose the possible effect of that conflict and causes injury or potential injury to client), 4.63 (reprimand generally appropriate when a lawyer negligently fails to provide client with accurate or complete information and causes injury or potential injury to client), 5.13 (reprimand generally appropriate when lawyer knowingly engages in certain conduct involving dishonesty, fraud, deceit or misrepresentation and adversely reflecting on fitness to practice law), 7.3 (reprimand generally appropriate when lawyer engages in

conduct that is a violation of duty owed to profession and causes injury or potential injury to client).

Several factors in mitigation exist in this case, including the absence of a prior disciplinary record, ABA Standard 9.32(a), personal or emotional problems, ABA Standard 9.32(c), full and free disclosure and cooperation in the grievance process, ABA Standard 9.32(e), inexperience in the practice of law, ABA Standard 9.32(f), excellent character or reputation in the community, ABA Standard 9.32(g), and remorse, ABA Standard 9.32(*l*). We also acknowledge that the respondent's violations arose from his substance abuse problem, that the respondent entered rehabilitation programs before the disciplinary proceedings commenced, that the respondent has continued his treatment program, and that the respondent has been temporarily suspended from the practice of law since July 28, 1988, based on the charge of converting Ortega's funds. Although drug abuse is in itself reprehensible and certainly does not excuse the respondent's unethical behavior, the hearing board considered that problem and the respondent's good faith efforts to overcome it when determining the recommended sanction.

■ The hearing board also found several aggravating factors, including selfish motive in obtaining funds to maintain and pay for his drug habit, ABA Standard 9.22(b), vulnerability of the victim because of the personal relationship between the victim and the respondent, ABA Standard 9.22(h), a pattern of misconduct, ABA Standard 9.22(c), and multiple offenses, ABA Standard 9.22(d). The ultimate sanction for multiple charges of misconduct generally should be greater than the sanction for the most serious conduct. ABA Standards § II at 6.

A lengthy suspension provides the appropriate sanction for the misconduct of this

---

**3.** The hearing panel disagreed with the hearing board's conclusion that the respondent did not act knowingly. There is no suggestion in the panel's order, however, that in doing so it followed the mandate of C.R.C.P. 241.15(b) that "[t]he hearing panel must accept the hearing board's findings of fact unless, on the basis of its own review of the record, it determines that such findings are clearly erroneous." The panel simply stated its disagreement after reciting that it had reviewed the findings and the complainant's objections.

first-time offender. We agree with the hearing board that the respondent needs successful drug rehabilitation and education in the business aspects of legal practice in order to solve the underlying causes of his violations of the Code of Professional Responsibility. The suspension provides time to ensure that the respondent will successfully overcome his drug problem and give him an opportunity to learn proper financial management before returning to the practice of law.

Therefore, we order that Robert James Schubert be suspended from the practice of law effective immediately for a period of three years, the maximum period permitted by our rules. *See* C.R.C.P. 241.7(2). We adopt the conditions for reinstatement recommended by the grievance committee. When the respondent applies for reinstatement, in addition to complying with the provisions of C.R.C.P. 241.22, the respondent must establish the following, as recommended by the hearing board:

1. Respondent has remained drug-free and has continued with his recovery process from cocaine addiction. Appropriate psychological and psychiatric evidence and a long history of negative drug screens will be required.

2. Respondent has educated himself about the business aspects of practicing law. Respondent has taken appropriate business and ethics courses about the handling of a trust account and the maintenance of client and attorney trust funds in an ethical fashion.

We also order that the respondent pay the costs of this proceeding in the amount of $4,716.39 within ninety days of the date of this order to the Supreme Court Grievance Committee, Dominion Plaza, Suite 500–S, 600 Seventeenth Street, Denver, Colorado 80202–5435.

VOLLACK, J., does not participate.