The PEOPLE of the State of
Colorado, Complainant,

v.

Mack Edward MURRAY, Jr.,
Attorney–Respondent.

No. 94SA161.

Supreme Court of Colorado,
En Banc.

Dec. 19, 1994.

Rehearing Denied Jan. 17, 1995.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Mack Edward Murray, Jr., pro se.

Richard S. Gross, Denver, amicus curiae.

Chief Justice ROVIRA delivered the Opinion of the Court.

A hearing panel of the Supreme Court Grievance Committee unanimously approved the findings of fact of a majority of the hearing board and the recommendation that the respondent [1] be disbarred, be ordered to

---

1. The respondent was admitted to the bar of this court on December 17, 1990, and is registered as an attorney upon this court's official records. On September 30, 1993, the respondent was temporarily suspended from the practice of law because of many of the allegations contained in the formal complaints which are the basis of this proceeding. C.R.C.P. 241.8. The respondent petitioned for dissolution or amendment of the immediate suspension order. *Id.* Following a hearing on the respondent's petition for dissolution, the hearing officer concluded:

Although there is no evidence that the Respondent has been convicted of a serious crime and although the evidence offered to establish conversion of funds might be more properly characterized as failures to refund unearned fees and to account properly for trust funds, there is sufficient evidence to establish reasonable cause to believe that the Respondent is causing immediate and substantial public or private harm because his conduct in the practice of law poses an immediate threat to the effective administration of justice.

pay restitution, and be assessed costs. The respondent has filed exceptions to the factual findings and recommendation of the hearing board and panel. After considering the record and the seriousness of the respondent's misconduct, we accept the hearing panel's recommendations, but order that the disbarment be effective on the issuance of this opinion.

## I

The assistant disciplinary counsel filed two formal complaints against the respondent. The first, GC 92A–54, contained one count of misconduct, while the second complaint, GC 93A–90, had eleven counts. The two complaints were consolidated into one proceeding before the hearing board. In a fifty-page report, based on the evidence presented at the hearing, the board found that the following facts had been established by clear and convincing evidence.[2]

## A

The respondent represented Jeremy and Sandra Stuckey in a civil action against an insurer alleging that the insurer wrongfully failed to pay a claim. The matter was removed to federal district court. Between February 1991 and July 1992, the respondent's misconduct included failing to submit a settlement letter and failing to attend a settlement conference, failing twice to submit proposed pretrial orders and on two occasions failing to appear at scheduled pretrial conferences. The federal magistrate recom-

mended to the district judge that the Stuckey case be dismissed for failure to prosecute. The respondent filed no objections to the magistrate's recommendations and he did not respond to a show cause order involving the defendants' attorney fees and costs. The case was dismissed for failure to prosecute, and the defendants' fees and costs were assessed against the Stuckeys. The respondent failed to pay the fees and costs as ordered, although he did pay a portion of the assessed fees late.

He then filed a substantially identical second civil action in federal district court. The respondent also filed, inexplicably, a motion for summary judgment in the first action, which had been dismissed eight months before. The motion was stricken, and the second complaint was dismissed on the ground that the dismissal of the first case constituted an adjudication on the merits under the federal rules.

The hearing board concluded that the respondent's conduct violated DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to the lawyer without adequate preparation under the circumstances); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of the lawyer's client through reasonably available means); DR 7–101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employ-

---

The record supports the hearing officer's findings. On December 23, 1993, we accepted the hearing officer's recommendation, and affirmed the order of immediate suspension.

In his exceptions, and in the briefs filed in this court, the respondent essentially asks us to reconsider our previous affirmance of the order of immediate suspension. We decline to do so.

2. The respondent's exceptions and briefs filed in this court allege numerous factual errors in the hearing board's findings. The respondent did not, however, designate or file any part of a transcript of the testimony and proceedings before the hearing board, as he was required to do. See C.R.C.P. 241.20(b)(4).

The respondent's exceptions to the board's findings are largely based on findings of fact that the board resolved against him after listening to testimony. When they are approved by the pan-

el, the hearing board's factual findings are binding unless, after considering the record as a whole, the findings are unsupported by substantial evidence. *People v. Phelps,* 837 P.2d 755, 755 n. 1 (Colo.1992). When it acts as a fact finder, the board has the duty to assess the credibility of the testimony and evidence before it. *Id.* Because the respondent did not file a transcript of the hearing before the board we cannot say that the board's findings are not supported by the record. *Id.*

The hearing board also determined that the assistant disciplinary counsel failed to prove by clear and convincing evidence that the respondent committed professional misconduct with respect to two of the counts contained in GC 93A–90. The assistant disciplinary counsel has not excepted to the findings of the board or panel.

ment entered into with a client); DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship); and DR 7–106(C)(5) (in appearing in the lawyer's professional capacity before a tribunal, a lawyer shall not fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal, without giving to opposing counsel timely notice of intent not to comply). The board also determined that the respondent's misconduct in the Stuckey matter was willful because of the respondent's repeated inaction while he was under an obligation to perform mandatory duties. *People v. Farrant,* 852 P.2d 452, 455 (Colo.1993).

### B

The respondent was retained by Anthony Shapiro in May 1991 to defend him on assault charges pending in Jefferson County District Court. The respondent twice failed to appear for his client's arraignment, and missed the pretrial conference. He did not file any motions in the case, and did not present the affirmative defense of defense of a third person at trial, although the board found that the evidence supported such an affirmative defense. The jury found Shapiro guilty of assault and crime of violence.

The respondent argued for a "probationary structure" in Shapiro's sentence at the sentencing hearing, but the court pointed out that a sentence to the department of corrections was mandatory in Shapiro's case. The court sentenced the respondent's client to eight years in the department of corrections. The respondent then filed an erroneous notice of appeal. The notice of appeal identified the defendant by a completely different and wrong name, contained the heading for the incorrect court appealed from, as well as the wrong date of the defendant's sentencing, and indicated an intent to appeal the conviction and sentence to the United States Court of Appeals for the Tenth Circuit, rather than the Colorado Court of Appeals. The district court subsequently granted the respondent's motion to withdraw.

Although Shapiro's motion for post-conviction relief under Crim.P. 35(c) based on inef-

fective assistance of counsel was denied, the majority of the hearing board found that the respondent's conduct violated DR 6–101(A)(2) (handling a legal matter without adequate preparation), and DR 6–101(A)(3) (neglect of a legal matter).

### C

In April 1992, the respondent filed a civil action on behalf of his client, Eugene Robinson, asserting that Robinson had been injured in a slip and fall accident on or near the defendant's place of business. The respondent filed an incomplete disclosure certificate, a response to the defendant's motion for summary judgment which violated C.R.C.P. 56, he failed to appear for a court-ordered settlement conference, and did not submit a pretrial conference statement or a confidential settlement statement. He also arrived an hour late for the deposition of his own client.

The respondent's client had been treated by L. Barton Goldman, M.D., for head and back injuries sustained in the accident. The respondent and the defendant's lawyer agreed to take Dr. Goldman's deposition at the doctor's office. At the time scheduled for the deposition, the defendant's lawyer and the doctor appeared, but someone from the respondent's office called and stated that the respondent was in court and could not appear at the deposition. The deposition was reset, but again, although the defendant's lawyer and Dr. Goldman were present at the scheduled time, someone called from the respondent's office and said that he was detained and would not be able to attend.

Doctor Goldman twice requested payment in the amount of $875 for the canceled depositions, preparation time, and a deposit for testimony at trial, but the respondent ignored the requests and has not paid the doctor.

The Robinson case was eventually dismissed with prejudice based on the respondent's disregard of his discovery obligations, but the district court vacated the dismissal and instead entered an order and a judgment requiring the respondent and his client to pay $1,022.50 in attorney fees to the defen-

dant's lawyer. The district court also barred introduction of Dr. Goldman's testimony at trial. No payments have been made on the judgment.

The hearing board concluded that the respondent's failure to honor his discovery obligations and to pay Dr. Goldman violated DR 1-102(A)(5) (conduct prejudicial to the administration of justice), and DR 6-101(A)(3) (neglect of a legal matter).

### D

Doctor Truppo treated a patient for injuries received in an automobile accident. During the course of treatment, problems arose with the patient's insurance coverage. Doctor Truppo hired the respondent in November 1991 to collect medical bills from the patient's insurer. Truppo paid the respondent a $650 retainer on November 15. The respondent failed to deposit the $650, representing unearned attorney fees, and thus client funds, *People v. Fritsche*, 849 P.2d 31, 32 (Colo.1993), into a trust account (in fact the respondent did not even have a trust account). He also did not provide an accounting or refund the unearned fees, failed to answer the client's inquiries about the status of the case, took no action on the client's behalf for about one year, and did not promptly return client documents. When Truppo retained a new lawyer, the respondent again failed to provide an accounting, give a refund, or return the client's file upon request. In fact, the respondent provided no tangible services for Dr. Truppo.

As the hearing board determined, the respondent's conduct violated DR 6-101(A)(3) (neglect of a legal matter), DR 7-101(A)(1) (intentional failure to seek the lawful objectives of the client), DR 7-101(A)(2) (intentional failure to carry out a contract of employment), DR 9-102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located), DR 9-102(B)(3) (failure to maintain complete records of client property in the possession of

the lawyer and to render appropriate accounts to the client regarding the property), and DR 9-102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive).

### E

The respondent was retained in September 1992 to defend Mary Alyce Pendleton against federal drug charges. The respondent initially received a retainer of $5,000 from the client and her father. Because the matter appeared to be going to trial, however, the respondent collected another $5,000, making a total retainer of $10,000. In justifying his request for the second $5,000, the respondent provided the client with an inaccurate billing statement. When the client was unable to contact the respondent prior to trial, the federal district court appointed another lawyer to represent her. Nevertheless, the respondent declined to provide the client with a refund or an accounting, and he did not turn over the client's file.

Because he did not deposit the unearned retainer into a trust account, the respondent violated DR 9-102(A) (all client funds paid to the lawyer shall be deposited in an identifiable interest-bearing depository account).[3] The respondent's failure to provide an appropriate accounting of the client funds and to return the client's file upon demand also violated DR 9-102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive). After January 1, 1993, (the effective date of the Rules of Professional Conduct (R.P.C.)), the respondent violated R.P.C. 1.15(b) (a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, render a full accounting regarding such property).

---

**3.** On and after January 1, 1993, the respondent's failure to deposit the funds in a trust account violated Rule of Professional Conduct 1.15(a) (a lawyer shall hold funds of clients in the lawyer's possession in a separate account).

## F

The respondent represented Arthur L. Cloud in a personal injury action. In connection with this case, the respondent failed to deposit various funds received in settlement of the civil suit into a trust account, contrary to DR 9–102(A). He also failed to provide anything even remotely resembling an accounting of the funds he received and disbursed on behalf of the client, in violation of DR 9–102(B)(3) (failure to maintain complete records of client property in the possession of the lawyer and to render appropriate accounts to the client regarding the property), and DR 9–102(B)(4). As a result of the respondent's practices, $500, once destined for a law firm that had formerly represented Cloud, is missing.

The respondent also signed a statement that he would pay a certain sum to a medical provider creditor of his client out of settlement proceeds, notwithstanding that, at the time he signed the statement, he had no intention of making the payment described, thereby violating DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## G

Between December 1991 and late 1992, the respondent handled an insurance matter in which he failed to communicate with the client, and failed to take appropriate action to obtain payment from the insurer, contrary to DR 6–101(A)(3) (neglect of a legal matter).

## H

The respondent was hired to defend Lucilious Ward, and his wife, Joann Ciatto, in an action brought against them to collect on a promissory note. In the course of his representation, the respondent failed to file an appropriate answer to the complaint until the court ordered him to do so, he did not ensure that the plaintiff's requests for admissions were answered in a timely manner and did not respond properly to other discovery requests, he failed to file an adequate disclosure certificate, did not inform his clients that summary judgment had been entered against them, and he failed to appear for the first hearing on his former client's (Ciatto's) motion to vacate the judgment against her. The respondent therefore neglected a legal matter entrusted to him, in violation of DR 6–101(A)(3).

## I

Denise France hired the respondent in April 1992 to assist her in recovering an automobile which had been repossessed from her, or to get back her purchase money for the automobile, and to pursue other claims against the seller. The respondent did not keep his client properly informed of the progress in the case, he missed office appointments, and he did not contact witnesses provided by the client. In addition, the respondent told France that her case would soon be tried even though he had not even filed a complaint yet. When the matter eventually came to trial, the respondent informed the court that his client had lied to him about pertinent facts in the case, and he moved to dismiss all claims. The court granted the respondent's motion and awarded the defendants $1,113.50 attorney fees against France. The hearing board concluded that the attorney fees assessed against the respondent's client were directly attributable to the respondent's misconduct involving violations of DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(2) (handling a legal matter without adequate preparation); and DR 6–101(A)(3) (neglect of a legal matter).

## J

Between June and August 1993, in a criminal case pending in district court in which he represented the defendant, the respondent was late once and one time failed to appear entirely for scheduled court proceedings, twice causing the court to delay resolution of the matter. The respondent's conduct therefore violated R.P.C. 1.3 (neglect of a legal matter), and R.P.C. 8.4(d) (conduct prejudicial to the administration of justice).

## II

 The hearing panel approved the recommendation of a majority of the hearing

board that the respondent be disbarred, and pay restitution and costs. The board considered a number of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) in formulating their recommendation. The Standard we find most appropriate is 4.41, which provides that in the absence of mitigating circumstances, disbarment is generally warranted when:

> (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or
> (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. *See, e.g., People v. Williams*, 845 P.2d 1150 (Colo.1993) (disbarment warranted when lawyer neglects legal matter, fails to return client's retainer, evades service of process, fails to respond to request for investigation, and abandons practice); *People v. Dulaney*, 785 P.2d 1302 (Colo.1990) (lawyer disbarred for chronic neglect of client matters and use of deceit to cover the neglect).

The respondent was licensed to practice law in Colorado in December 1990. Starting just a few months later, and continuing over a two-year period, the respondent embarked as a sole practitioner on a course of conduct that has resulted in ten separate instances of professional misconduct, some of which present at least the potential for serious harm to the respondent's clients and to the administration of justice. The gulf between the respondent's perception and understanding of the problems he has caused and the true state of affairs is underscored by the respondent's recommendation to the court that he be reinstated to the practice of law from the order of immediate suspension and receive, presumably, a public censure at the most for his misconduct.

The board found the existence of the following mitigating factors: absence of a prior disciplinary history, ABA *Standards* 9.32(a); absence of a dishonest or selfish motive, *id.* at 9.32(b); personal or emotional problems, *id.* at 9.32(c); character or reputation, *id.* at 9.32(d); and the imposition of an immediate suspension, *id.* at 9.32(k). In aggravation, the respondent displayed a pattern of misconduct, *id.* at 9.22(c); there are multiple offenses, *id.* at 9.22(d); the respondent has steadfastly refused to acknowledge the wrongful nature of his misconduct, *id.* at 9.22(g); some of the respondent's victims were vulnerable, *id.* at 9.22(h); and the respondent has been indifferent to making restitution, *id.* at 9.22(j).

Weighing the factors in mitigation and aggravation against the respondent's substantial misconduct, we conclude that disbarment is essential to protect the public. We therefore accept the hearing panel's recommendation that the respondent be disbarred. In addition, prior to any application for readmission, the respondent must make restitution as recommended by the hearing board. We decline, however, to make the order of disbarment retroactive to the effective date of the respondent's temporary suspension.

In *People v. Abelman*, 804 P.2d 859, 862–63 (Colo.1991), we discussed what circumstances, if any, would justify the retroactive imposition of suspension or disbarment in the absence of an order imposing immediate suspension during the pendency of the disciplinary proceedings: "[W]hether the conduct is part of a continuing pattern or whether there is only a single instance of misconduct; whether there is a significantly attenuated relationship between the misconduct and the practice of law; and whether the passage of time mitigates the severity of the discipline required." *Id.* at 862.

Although there was an immediate order of suspension in this case, we nevertheless find retroactive discipline inappropriate. The sheer magnitude of the respondent's pattern of misconduct and its direct connection to the practice of law counsel against the retroactive imposition of discipline. Moreover, the time delay between the alleged misconduct, the order of immediate suspension, and this order of disbarment is not unreasonable. We note that the respondent has filed at least five motions for enlargement or extension of time in this disciplinary proceeding. Accordingly, we make the order of disbarment effective as of the date of this opinion.

### III

It is hereby ordered that Mack Edward Murray, Jr., be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that, prior to any application for readmission, the respondent must make restitution as recommended by the hearing board on pages 49–50 of the findings of fact and recommendation of the hearing board, dated March 24, 1994. It is further ordered that the respondent pay the costs of this proceeding in the amount of $6,540.33 within 90 days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.

SCOTT, J., dissents.

MULLARKEY, J., does not participate.

Justice SCOTT dissenting:

The majority accepted the recommendation of a divided hearing board that the respondent, Mack Edward Murray, be disbarred and ordered to pay costs.[4] Although I would agree with the majority that there were egregious violations requiring discipline and I agree "that in the absence of mitigating circumstances, disbarment is generally warranted," maj. op. at 1021, I do not agree with the majority's imposition of the sanction of disbarment on the ground that it is unwarranted and hence, too severe a sanction given the existence of several mitigating factors. Therefore, I respectfully dissent as to part II of the majority opinion.

The majority sufficiently sets forth the facts regarding the conduct of respondent, generally establishing, without doubt, the inability of Murray to both conduct the business of practicing law and to properly represent his clients. As a new, inexperienced attorney, Murray's ability to attract clients, in numbers greater than he was capable of representing, surely contributed to his wrongful conduct. On numerous occasions, he failed to attend important meetings or, when present was not adequately prepared

to represent his clients, and failed to submit pretrial orders or appear at scheduled proceedings, resulting in inexcusable harm to his clients. Due to the high number of clients he represented, his conduct caused harm to many and required an immediate suspension by this court when first brought to our attention. However, the issue now determined by the majority in the affirmative is whether a new, inexperienced attorney without a prior disciplinary history and absent a dishonest or selfish motive with personal or emotional problems must be disbarred for behavior not violative of our criminal laws but in violation of our rules of conduct.

### I

We have previously held that suspension, and not disbarment, is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client. *People v. Schubert,* 799 P.2d 388 (Colo.1990); American Bar Association *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) ("ABA *Standards* ") 4.42. However, in the *absence* of mitigating circumstances, disbarment is generally appropriate when: (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client. ABA *Standards* 4.41; *People v. Southern,* 832 P.2d 946 (Colo.1992).

Although Murray did engage in a pattern of neglect and caused potentially serious injury to several clients, the presence of mitigating factors in this case calls for a sanction less than disbarment. In particular, the hearing board found the existence of the following mitigating factors: absence of a prior disciplinary history, ABA *Standards* 9.32(a); absence of dishonest or selfish mo-

---

4. Two members of the board recommended that the respondent be disbarred, and one member recommended that the respondent be suspended from the practice of law for three years.

tive, *id.* at 9.32(b); personal or emotional problems, *id.* at 9.32(c); character or reputation, *id.* at 9.32(d); and the imposition of an immediate suspension, *id.* at 9.32(k).[5]

The majority apparently considered these mitigating factors, yet still found that disbarment was appropriate. However, in my opinion, a survey of previous Colorado attorney discipline case law indicates that a three year suspension with future practice subject to appropriate conditions would be the proper sanction for Murray. In cases concerning a pattern of neglect involving similar mitigating factors, the attorney typically receives a three year suspension of his or her license. For example, in *People v. Schubert,* 799 P.2d 388 (Colo.1990), we held that a three year suspension was warranted although the attorney engaged in multiple instances of misconduct and needed to complete a drug rehabilitation program. The attorney in that case commingled funds, used client funds for personal and business expenses and borrowed money from a client without full disclosure. Despite those serious violations of the Code of Professional Responsibility, we held that disbarment was too severe a sanction, stating "[t]he respondent's misuse of his client's funds, while serious and deserving of sanction, did not exhibit the dishonesty and breach of trust inherent in the knowing conversion of client funds." *Id.* at 393; *see also People v. Dixon,* 200 Colo. 520, 616 P.2d 103 (1980) (holding that the failure to forward answers to interrogatories to opposing counsel, failure to appear at hearing to compel discovery, failure to appear when ordered to show cause why attorney should not be held in contempt, failure to tell client his case had been dismissed and failure to return money given to him for costs warrants indefinite suspension of license to practice law).

Disbarment has generally been reserved for attorneys who engaged in intentional misconduct with a dishonest or selfish motive or who have been previously sanctioned. *See, e.g., People v. Southern,* 832 P.2d 946 (Colo.

1992) (attorney's inaction in legal matters entrusted to him and abandonment of his clients warrants disbarment, particularly where the attorney was previously suspended for neglect and abandonment of client matters and failure to cooperate in disciplinary proceedings); *People v. Mulligan,* 817 P.2d 1028 (Colo.1991) (conduct involving dishonesty warrants disbarment); *People v. Susman,* 787 P.2d 1119 (Colo.1990) (neglect of legal matters and misrepresenting status of litigation to clients, when coupled with misrepresentation to grievance committee and two previous suspensions for neglect of client affairs warrants disbarment); *People v. Dulaney,* 785 P.2d 1302 (Colo.1990) (attorney's chronic neglect of client matters and use of deceit to cover neglect warrants disbarment).

Murray, like many of the numerous graduates of our law schools who are unable to find employment under an experienced attorney, opened his own law practice soon after being admitted to the Colorado bar. Murray had been practicing law for less than three years at the time of his suspension. It is clear from the facts of this case that he is unable to properly conduct or manage his own private practice at this early stage of his legal career. A lengthy suspension provides the appropriate sanction for the misconduct of this first-time offender. In addition, however, the respondent needs training and supervision in practice skills, the method and delivery of adequate legal services, as well as education in the business aspects of legal practice in order to solve the underlying causes of his violations of the Code of Professional Responsibility. A suspension would give the respondent an opportunity to obtain that training, supervision and education and would allow him a conditional return to the practice of law. Disbarment, however, would assure that he is not given that opportunity, and terminates Murray's license to practice.

The primary purpose of lawyer discipline proceedings is "to protect the public and the administration of justice from lawyers who

---

**5.** The hearing board specifically rejected the respondent's claim of inexperience as a mitigating factor, given that so much of his misconduct involved fundamental and basic issues. *People v. Reeves,* 766 P.2d 1192 (Colo.1988). The basic and fundamental mistakes, however, were pre-

sumably a direct result of the size of the respondent's caseload. Respondent's inexperience caused him to take on more business than he was able to handle, and resulted in mistakes of neglect rather than of ignorance. The majority is now punishing respondent for his inexperience.

have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA *Standards* 1.1; *People v. Abelman*, 804 P.2d 859, 863 (Colo.1991). As many courts have noted, while sanctions imposed on a lawyer obviously have a punitive aspect, nonetheless, it should not be the purpose of the proceedings to impose such sanctions for punishment. *Abelman*, 804 P.2d at 863; *see, e.g.*, ABA *Standards* 1.1, commentary. In this case, the public has already been protected by Murray's immediate suspension by unanimous order of this court on September 30, 1993. There is no need to punish Murray by banning him, at this early stage in his career, from continuing in his chosen profession, unless, of course, he is unable to meet reasonable conditions that might be imposed as conditions of readmission to assure he seeks and obtains supervision upon his return to practice.

Admittedly, Murray's egregious conduct has been exacerbated by the fact that he has yet to accept that his actions were violative of the Code of Professional Responsibility, and he has yet to show any remorse. If Murray does not recognize that the way in which he conducted his practice in the past is unacceptable, his suspension if imposed, could continue. If, however, after an appropriate cessation of practice he agrees to take measures to assure that he will not make the same types of mistakes again, disbarment effects a punishment of a young, inexperienced attorney not contemplated by our rules.

## II

For the foregoing reasons, I would recommend a three year suspension of Murray's license, with the stipulation that resumption of the practice of law be appropriately conditioned, including the mandatory participation in a mentor program. Accordingly, I respectfully dissent as to part II of the majority opinion.

