**The PEOPLE of the State of Colorado, Complainant,**

v.

**Patrick L. DULANEY, Attorney–Respondent.**

**No. 89SA364.**

Supreme Court of Colorado, En Banc.

Jan. 29, 1990.

Linda Donnelly, Disciplinary Counsel, and George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Patrick L. Dulaney, Denver, pro se.

PER CURIAM.

This is an attorney discipline case involving several acts of misconduct by the respondent, Patrick L. Dulaney. Although a hearing panel of the Supreme Court Grievance Committee recommended that the respondent be suspended from practicing law for at least three years, we find the respondent's misconduct sufficiently severe to warrant disbarment.

A hearing board of the grievance committee heard this matter, and a hearing panel approved the findings and conclusions of the hearing board. The hearing board's findings and conclusions were based on a stipulation of facts filed by Dulaney and the deputy disciplinary counsel.

Dulaney was admitted to the bar of this court on October 17, 1977. He is therefore subject to the jurisdiction of this court and its grievance committee in these proceedings. Dulaney was transferred to disability inactive status on January 29, 1988.

I.

A.

In November 1981, George A. Hinshaw, Esq., under the signature of Hinshaw and Dulaney, P.C., filed a complaint on behalf of Joan Word against William Mele. Respondent Dulaney eventually took over the case. In April 1982, Mele's attorneys filed a motion for sanctions and dismissal for failure to comply with a court order to produce documents. After a hearing, the

court denied the motion to dismiss but ordered that the documents be produced within forty-five days. On August 11, 1982, Mele filed a motion for dismissal because the documents had not been produced. The court ordered Word to file any evidence of her attempts to comply with Mele's request for documents, explaining that if Word did not do so, Mele could apply, *ex parte*, for dismissal. Dulaney did not respond to the court order even though his client had made many written attempts to obtain the requested documents and some were unavailable. On October 6, 1982, in response to Mele's *ex parte* motion, the court dismissed the action with prejudice.

In late 1982 or early 1983, Word learned that her case had been dismissed. Dulaney told her that because he was a friend of a judge he would be able to have the case refiled. The case was not refiled, but Dulaney told Word that the matter was on appeal. After several years, during which Dulaney assured Word that the matter was on appeal, Word contacted another attorney who discovered that the case had been dismissed and had never been appealed. Word then brought a malpractice action against Dulaney and obtained a judgment against him. The matter was ultimately resolved when Dulaney paid Word $12,000 to obtain satisfaction of the judgment.

### B.

In May 1980, Dulaney went into practice with George Hinshaw. They placed an advertisement in the *Colorado Lawyer* stating that "George A. Hinshaw and Patrick L. Dulaney take pleasure in announcing that they have formed a professional corporation known as Hinshaw and Dulaney, P.C., and Associates." The corporation never existed, yet from 1980 through October 1982 Dulaney used various letterheads that referred to the professional corporation.

On November 26, 1982, Dulaney formed his own corporation. This corporation was suspended in September 1984, but for a year thereafter Dulaney continued to represent that the corporation existed.

### C.

In September 1983, William Seltzer retained Dulaney to bring a personal injury action. Dulaney filed a complaint on April 19, 1984, and the action was later dismissed without prejudice for failure to prosecute. Dulaney refiled the case on October 22, 1985, and the case was eventually dismissed with prejudice for failure to show reasonable cause for delay in prosecuting it. Seltzer was unaware of these dismissals. In December 1985, Seltzer contacted Dulaney and was told that the trial would be delayed until after Christmas. In January 1986, Seltzer met with Dulaney and Dulaney promised to set a new trial date in June or July 1986.

Seltzer became concerned about further delays and contacted another attorney who told him that he could not do anything until Dulaney withdrew from the case. Seltzer asked Dulaney for his file and Dulaney told him he would return it within a month. When Dulaney failed to do so, Seltzer went to Dulaney's office to get it. Dulaney's wife, who was also his secretary, told Seltzer that Dulaney was hospitalized and that she could not release the file without permission, but that she would make sure he got the file within two weeks.

Seltzer wrote and called Dulaney several times and received no response. Seltzer then contacted the opposing counsel in the original action and learned that the case had been dismissed with prejudice. Seltzer confronted Dulaney and Dulaney told him that he had already refiled the action. Seltzer asked for his file. Dulaney told him that he would send it to Seltzer's new attorney the next day. The file was never returned.

On September 12, 1986, the grievance committee sent Dulaney, by certified mail, a copy of the request for investigation filed against him in the Seltzer matter. Despite notification that his answer was overdue and that failure to respond could result in discipline, Dulaney did not respond. Dulaney also failed to return the subsequent call of the grievance committee investigator.

### D.

On October 9, 1980, Barry Stephen Walsh was involved in a motorcycle-auto accident with Julie Ann Anderson and retained Dulaney to represent him in bringing suit against Anderson. Before Dulaney filed the complaint, Anderson's insurance company sued Walsh. Although Dulaney agreed to handle the defense, he did not file an answer or counterclaim and the court entered a default judgment against Walsh for $726.28 on December 23, 1981. Walsh was unaware of the judgment. On March 16, 1982, Walsh's driver's license was suspended pursuant to the Financial Responsibility Act, §§ 42–7–101 to –510, 17 C.R.S. (1984 & Supp.1989), for failure to pay the judgment. Dulaney said he would take care of it, but did nothing. Walsh was stopped by a state patrolman in 1984 and discovered that Dulaney had not resolved the matter. In March 1984, Dulaney finally forwarded the documentation that enabled Walsh to have his license reinstated a few days later.

In 1982, Walsh signed the complaint in the suit against Anderson and the City of Aurora. Thereafter, Dulaney repeatedly advised him that the case had been postponed. In February 1987, Walsh discovered that the suit had never been filed. Walsh requested his file, but Dulaney did not return it.

On February 13, 1987, the grievance committee sent a request for investigation in the Walsh matter to Dulaney. It was returned marked "unclaimed," and then remailed and not returned. Although Dulaney was reminded that his answer was overdue and that he could be disciplined for failing to respond, he did not respond. The grievance committee investigator left a message with Dulaney's secretary-wife, but Dulaney did not return the call.

### E.

On February 5, 1986, the grievance committee mailed to Dulaney a request for investigation in another disciplinary matter. It was returned, marked "unclaimed." The grievance committee wrote Dulaney that his response was overdue and that he could be disciplined for failing to respond. After Dulaney's secretary-wife advised the grievance committee that Dulaney had not received the request for investigation, the committee remailed the request to Dulaney's new address. Dulaney did not respond. The grievance committee investigator called Dulaney's office and left a message with his secretary-wife, but Dulaney did not return the call.

### F.

In 1983, Monte Campbell retained George Hinshaw to represent him in a dissolution of marriage action. Hinshaw and Dulaney entered a joint appearance in the case. After a hearing, the court issued verbal permanent orders of record and requested that the opposing counsel prepare the written orders. Because Hinshaw was leaving the country, Dulaney was designated to handle the appeal and Campbell was so advised. In August 1983, Campbell moved to Texas, and in September he gave Dulaney his new address and inquired about the status of the case. Dulaney told him that nothing had happened and that he would handle the appeal as soon as the orders were signed. During the following months, Campbell continued to ask Dulaney about the status of the case and was given the same answer.

Sometime in 1984 Dulaney moved out of Hinshaw's office building, and Campbell was unable to locate him. Campbell contacted Hinshaw who asked Dulaney for Campbell's file. Hinshaw eventually received the file.

In January 1985, Campbell was served with a contempt citation and discovered that the court had in fact signed the final orders on August 29, 1983, *nunc pro tunc* July 7, 1983. Dulaney had signed and approved the orders "as to form." Campbell retained another attorney who concluded that appeal at that late date was no longer possible.

### II.

As the parties stipulated, the conduct described above violates several provisions

of the Code of Professional Responsibility: DR 1–102(A)(1) (violating a disciplinary rule), DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) (engaging in conduct that adversely reflects on a person's fitness to practice law), DR 2–102(C) (holding oneself out as having a partnership with another lawyer when the partnership does not exist), DR 6–101(A)(3) (neglecting a legal matter entrusted to a lawyer), DR 7–101(A)(1) (failing to seek the lawful objectives of a client), DR 7–101(A)(2) (failing to carry out a contract of employment entered into with a client for professional services), DR 7–101(A)(3) (prejudicing or damaging a client in the course of a professional relationship), DR 9–101(C) (stating or implying that one is able to influence a tribunal improperly), and DR 9–102(B)(4) (failing to deliver a client's property promptly upon request). This conduct is grounds for discipline under C.R.C.P. 241.6 (misconduct justifies discipline), C.R.C.P. 241.6(1) (violating the Code of Professional Responsibility justifies discipline), C.R.C.P. 241.6(4) (gross negligence justifies discipline), and C.R.C.P. 241.6(7) (failure to respond to request by grievance committee justifies discipline).

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (hereinafter *"ABA Standards"*) prescribes severe punishment for this type of misconduct. Disbarment is generally appropriate when a lawyer:

> knowingly fails to perform services for a client and causes serious or potentially serious injury to a client, 4.41(b);
>
> engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client, *id.* 4.41(c);
>
> knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client, *id.* 4.61;

> knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, *id.* 6.21; or
>
> knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system. *Id.* 7.1.[1]

Suspension is generally appropriate when a lawyer "knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." *Id.* 4.12.

This court has disbarred attorneys for chronically neglecting their clients' legal matters and misrepresenting the status of their cases to clients. *See People v. Wyman*, 782 P.2d 339 (Colo.1989); *People v. Brooks*, 753 P.2d 208 (Colo.1988); *People v. Sanders*, 713 P.2d 837 (Colo.1985).

The *ABA Standards* also suggest certain factors that aggravate or mitigate an attorney's misconduct and therefore increase or decrease the appropriate sanction. In this case several aggravating factors are present. Dulaney has substantial experience in the practice of law. *ABA Standards* 9.22(i). He has exhibited a pattern of misconduct, *id.* 9.22(c), has committed multiple offenses, *id.* 9.22(d), and has obstructed disciplinary proceedings by intentionally failing to respond to requests for investigation, *id.* 9.22(e).

Dulaney argued to the hearing board that much of his misconduct resulted from his November 1985 auto accident and subsequent hospitalization. Because the bulk of his misconduct occurred before the accident, the hearing board concluded that the accident should not be considered a significant mitigating factor. In mitigation, however, Dulaney has no prior disciplinary record. *See id.* 9.32(a).

### III.

After reviewing the findings of the hearing panel of the grievance committee we

---

**1.** Although Dulaney might argue that his conduct was not designed to benefit himself at the expense of his clients, the hearing board found that he lied to clients in order to avoid facing the consequences of his failures and, therefore, intended to benefit himself by deceiving others.

concluded that disbarment appeared to be appropriate, even though the grievance committee had recommended the lesser sanction of suspension from the practice of law for at least three years. We, therefore, issued an order to show cause why the respondent should not be disbarred. Dulaney did not respond to the order. It is hereby ordered that Patrick L. Dulaney be disbarred and that his name be stricken from the roll of attorneys licensed to practice in this state. It is further ordered that Dulaney pay costs in the amount of $472.54 within thirty days of the date of this order to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Denver, Colorado, 80202.