The PEOPLE of the State of
Colorado, Complainant,

v.

Edward J. ESSAY, Jr., Respondent.

Nos. 99PDJ125, 00PDJ035.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

May 15, 2001.

Opinion issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members HELEN R. STONE and RALPH G. TORRES, both members of the bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

This consolidated matter was heard on August 17, 2000, before the Presiding Disciplin-

ary Judge ("PDJ") and two hearing board members, Helen R. Stone and Ralph G. Torres, both members of the Bar. James E. Coyle, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Edward J. Essay, Jr ("Essay") failed to appear in person or through counsel. Upon the People's motion, by Order dated May 24, 2000 (in Case No. 99PDJ125) and by Order dated July 5, 2000, (in Case No. 00PDJ035) default entered as to the facts set forth in the two consolidated Complaints, which were deemed established.[1] *People v. Richards*, 748 P.2d 341, 347 (Colo. 1987). The Orders entering default also found the charges under each claim asserted to be established with the exception of the following: in Case No. 00PDJ035, the charge of Colo. RPC 8.4(c) in claim I, and in Case No. 99PDJ125, the charges of Colo. RPC 8.4(h) in claim VI and all charges in claims VII (C.R.C.P.251.5(b) and Colo. RPC 8.4(b)), VIII (Colo. RPC 8.4(h)) and claim IX(C.R.C.P.251.5(b) and Colo. RPC 8.4(b)). At the commencement of trial, the People elected not to pursue the charges upon which default had been denied and those charges were dismissed.

The People's exhibits 1 through 4 were admitted into evidence. The PDJ and Hearing Board heard testimony from the People's witness Michael Gross, acting as inventory counsel, Ila Quinn, Donald Meyer, Steven L. Wright, Madison Morgan, and Mary Hawley. The PDJ and Hearing Board considered the People's argument, the exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Edward J. Essay, Jr. has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on February 2, 1979, and is registered upon the official records of the Court, attorney registration number 09333. Essay is subject to the jurisdiction of this court in this consolidated disciplinary proceeding.

The Orders entering default against Essay found that the facts set forth in the two Complaints in this consolidated proceeding were established as a matter of law. See Attachments 1 and 2.

In 1999, numerous Requests for Investigation were filed with the Office of Attorney Regulation Counsel ("OARC") concerning Essay. Due to Essay's failure to return files to his clients, on December 1, 1999, Judge Gilbert Martinez appointed Michael Gross of Colorado Springs, Colorado, as inventory counsel to find and take possession of Essay's client files. See C.R.C.P. 251.32(h). Although Gross had difficulty finding Essay, he eventually talked with him in January, 2000. Many of the files contained original client documentation which was critical to the resolution of the client matters. Essay informed Gross that the files were in the trunk of his car and he would deliver them to Gross immediately. He did not. Gross successfully found Essay a second time and offered to retrieve the files from Essay. Essay declined to allow Gross to pick up the files but agreed once again to deliver them. He again failed to do so.

By late January 2000, Gross located some of the client files and some office equipment, obtained a writ of execution, enlisted the assistance of five sheriff deputies, and took possession of fifty-four boxes of client files. Upon examining the files, with the assistance of OARC, Gross determined that no client file after 1995 had been retrieved. In April 2000, Essay's wife, who was then involved in a dissolution of marriage proceeding with Essay, informed Gross that a hearing in the dissolution had been scheduled. Gross attended the scheduled hearing, confronted Essay and demanded immediate possession of the files. Essay informed him the files were no longer in his car trunk and must have been overlooked in the building where the older files had been located. Notwithstanding additional efforts by Gross, no additional client files were ever retrieved. Essay's former office landlord testified that upon Essay's departure from his office space, the

1. Edward J. Essay, Jr. was immediately suspended from the practice of law on January 25, 2000, as a result of the facts which are set forth in the two Complaints in this action.

landlord noticed approximately 100 boxes of files stacked near the building dumpster which were picked up by the garbage collectors. Gross contacted the garbage collection personnel and was informed that the files had been burned. Gross, whose normal hourly rate is $250 per hour, was not compensated for his work in assembling and taking inventory of the retrieved files. He expended at least 180 hours in discharging his duties as inventory counsel and spent more than $600 of his own funds as costs in connection with his appointment. During Gross's various conversations with Essay, he expressed neither remorse nor offered to make restitution.

Ila Quin, the complaining witness regarding claim I in Case No. 99PDJ125, suffered substantial harm as the direct result of Essay's misconduct. Quin lost her house, every piece of real property she owned and was held in contempt of court, in part, because she could not produce the original documentation which she had provided to Essay and which he would not return to her. She was financially destroyed. Ms. Quin received an award of $2900 from the Attorneys' Fund for Client Protection due to Essay's misconduct.

Donald Meyer, the complaining witness regarding claim VI in Case No. 99PDJ125, and Essay's residential landlord, paid Essay $1517 to defend him in a district court matter in 1998. Essay took no action on Meyer's case notwithstanding numerous misrepresentations by Essay regarding the progress of his case. See Attachment 1, claim VI. Meyer suffered substantial harm as the result of Essay's misconduct. The Attorneys' Fund for Client Protection denied Meyer's claim because the misconduct occurred in 1998 [2] Meyer has had to hire another lawyer and expend substantial sums of money in an effort to correct the consequences of Essay's misconduct.

Madison Morgan hired Essay in 1998 to handle a tax dispute with the Internal Revenue Service. Morgan paid Essay $493.50 for fees and costs. Essay failed to perform the legal services he agreed to perform and ultimately stopped all communication with Morgan. Morgan was required to retain substitute counsel to protect his interests.

## II. CONCLUSIONS OF LAW

The facts and violations established by the entry of default in this consolidated proceeding reflect a pervasive case of attorney misconduct. Essay has been found to have violated Colo. RPC 1.1(lack of competent representation) on one occasion, Colo. RPC 1.3(neglect of a client matter) on ten occasions, Colo. RPC 1.4(a)(failure to communicate) on six occasions, Colo. RPC 1.5(charging an unreasonable fee) on one occasion, Colo. RPC 1.16(d)(failing to return client files) on two occasions, Colo. RPC 1.8(a)(entering into a business transaction with a client) on one occasion and fifteen separate violations of Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). Essay engaged in the prohibited conduct knowing that it violated his responsibilities as an attorney and with the intent to benefit himself at the expense of his clients.

The ABA *Standards for Imposing Lawyer Sanctions* ("ABA *Standards* 1991 & Supp. 1992) suggest that the presumptive sanction for the misconduct evidenced by the facts and violations in this case is disbarment." Several of the ABA *Standards* apply to Essay's appalling conduct. ABA *Standards* 4.41 provides:

Disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client;

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

Essay abandoned four separate client matters and caused serious or potentially serious

---

**2.** C.R.C.P. 252.2(c) provides that the Colorado Attorneys' Fund for Client protection shall be effective for claims filed with the board on or after July 1, 1999, and the board shall not pay claims for losses incurred as a result of dishonest conduct committed prior thereto.

harm to those clients. In each of the eight matters giving rise to this consolidated proceeding, Essay knowingly failed to perform services for his clients and caused serious or potentially serious injury to each of them.

There is a consistent pattern of neglect in Essay's handling of the eight matters. With regard to five separate matters, Essay made knowing misrepresentations to his clients that he was engaged in settlement discussions and he would soon favorably resolve their disputes. In several cases, while the clients were present in his office, Essay fabricated telephone conferences with the presiding judge and/or opposing counsel in the client's case intending the client to believe he was working on their cases when, in fact, he was not. In several cases, he informed the clients that he had negotiated large settlements for them, while in fact Essay had taken little if any action in their cases. In one matter, the clients, two elderly sisters, paid Essay a monthly amount for his fees, and he knowingly converted this amount to his own use.

ABA *Standards* 4.61 provides that "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." ABA *Standards* 5.11(b) provides that disbarment is appropriate when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Essay intentionally deceived virtually all of his clients giving rise to this consolidated proceeding. The clients suffered the most serious of legal consequences as a direct result of Essay's deceit: losing the right of appeal, foreclosure of properties, dismissal of bankruptcy proceedings, having default entered against them, garnishment of wages, and imposition of substantial tax liens, penalties, and interest.

Under Colorado law, only disbarment would address the misconduct giving rise to this proceeding. *See People v. Elliott*, 99PDJ059, slip op. at 8 (consolidated with 99PDJ086)(Colo. PDJ March 1, 2000), 29 Colo. Law. 112, 114 (May 2000)(disbarring attorney for his accepting advance fees from two clients, performing some but not all of the services for which he was paid, retaining the fees for one year in one matter and two years in another matter, and abandoning the clients); *People v. Pedersen*, 35 P.3d 173, 177 (Colo. PDJ 1999), 28 Colo. Law 123, 136 (November 1999)(disbarring attorney for accepting retainer agreeing to provide legal services, completely failing to communicate over a period of fifteen months, failing to tell client of his relocation, failing to perform any of the requested services, and failing to account for or return the retainer); *People v. Murray*, 887 P.2d 1016, 1022 (Colo.1994)(attorney disbarred for misconduct in eight separate matters including knowingly failing to perform services with potential for serious injury to client and engaging in pattern of neglect); *People v. Goldstein*, 887 P.2d 634 (Colo.1994)(attorney disbarred for dishonest and deceitful conduct in handling two legal matters, in which he concocted the progress he was making on the clients' cases, when indeed he had undertaken no such activity on their behalf); *People v. Gregory*, 797 P.2d 42 (Colo.1990)( attorney disbarred for engaging in pattern of neglect, abandonment and deceit of clients in six different matters which caused serious injury or potentially serious injury to clients); *People v. Dulaney*, 785 P.2d 1302, 1306 (Colo.1990) (attorney disbarred for chronic neglect of six client matters and use of deceit to cover the neglect).

Because Essay did not appear at the trial of this matter, no factors in mitigation have been presented to the PDJ and Hearing Board. However, numerous factors in aggravation are present which are considered pursuant to ABA *Standards* 9.22. Essay engaged in misconduct in virtually every instance with a selfish or dishonest motive, *see id. at* 9.22(b); he displayed a pattern of misconduct; *see id. at* 9.22(c); he participated in multiple offenses; *see id. at* 9.22(d); he obstructed the disciplinary process; *see id. at* 9.22(e); he refused to acknowledge the wrongful nature of his misconduct; *see id. at* 9.22(g); he took advantage of the vulnerability of his clients; *see id. at* 9.22(h) and he has

shown complete indifference to making restitution; *see id. at* 9.22(j). Essay had substantial experience in the practice of law at the time he engaged in the misconduct presented in this action; he has been practicing law in Colorado since 1979, *see id. at* 9.22(i).

### III.  ORDER AND IMPOSITION OF SANCTION

It is therefore ORDERED:

1.  EDWARD J. ESSAY, JR. attorney registration number 09333 is DISBARRED from the practice of law effective thirty-one days from the date of this Order and his name shall be stricken from the roll of attorneys licensed to practice law in the State of Colorado.

2.  On or before May 15, 2002, Edward J, Essay, Jr. shall pay the following sums, plus interest at the statutory rate from the date of this Order;

    a.  To Michael Gross the sum of $45,600 with interest from August 17, 2000;

    b.  To the Attorneys' Fund for Client Protection, all sums paid out by the fund in connection with the matters set forth in the Complaints with interest from the date of disbursement;

    c.  To Madison Morgan the sum of $343 with statutory interest from March 31, 1998;

    d.  To Donald Meyer the sum of $1,517 with statutory interest from July 31, 1998;

    e.  To Kevin Pidgeon the sum of $300 with statutory interest from September 30, 1997;

    f.  To Charles Von Fossen the sum of $1,500 with statutory interest from June 9, 1999.

3.  Essay is ORDERED to pay the costs of these proceedings;

4.  The People shall submit a Statement of Costs within fifteen (15) day of the date of this Order.  Respondent shall have ten (10) days thereafter to submit a response thereto.

### ATTACHMENT 1

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

1.  The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on February 2, 1979, and is registered upon the official records of this court, registration No. 09333.  He is subject to the jurisdiction of this court in these disciplinary proceedings.  The respondent's registered home address is 114 Joshua, Divide, Colorado 80829.  The respondent has no registered business address listed with Attorney Registration.  Last known addresses are: 306 South 25 th Street, Colorado Springs, Colorado 80904 and P.O. Box 6268, Colorado Springs, Colorado 80934.

*Daldegan Matter*

**(Lack of Competence – Colo. RPC 1.1; Neglect—Colo. RPC 1.3; Failure to Keep Client Reasonably Informed – Colo. RPC 1.4(a); and Dishonesty, Fraud, Deceit or Misrepresentation – Colo. RPC 8.4(c))**

2.  Dolores Daldegan is a 69 year old widow who owns a farm.

3.  In February or March 1998, Ms. Daldegan retained the respondent to provide tax and estate planning advice.  The respondent was to draft a will and an estate plan and form a corporation for the farm.  No fee agreement was executed.

4.  While reviewing Ms. Daldegan's 1997 tax return, the respondent informed Ms. Daldegan that Crop Reserve Program ("CRP") funds paid to farmers to refrain from planting certain crops are not income. The respondent told Ms. Daldegan that she was entitled to a tax refund for all tax years after 1991.  He subsequently sent her correspondence indicating that he would amend her tax returns and she would derive approximately $70,000 in tax refunds.  This advice by respondent was incompetent and demonstrates that the respondent lacked the legal knowledge, skill, thoroughness and preparation necessary for representation in this matter, in violation of Colo. RPC 1.1.  CRP funds are

income pursuant to the Internal Revenue Code and case law.

5. In April 1998, shortly after Ms. Daldegan's accountant had filed her 1997 tax return, the respondent filed an amended tax return. In the amendment, the respondent removed the CRP funds from income. Ms. Daldegan paid the respondent $1,426.25 for the 1997 income tax return preparation on April 15, 1998.

6. The respondent represented to Ms. Daldegan that he would additionally file amendments for the 1991 through 1996 tax years.

7. Subsequently, the IRS sent Ms. Daldegan a $12,000 refund for amounts paid for 1997 taxes, but instituted an audit of her 1997 amended tax return. On November 3, 1998, the IRS notified Ms. Daldegan that it was making a full disallowance of her request for refund.

8. Between April 1998 and March 1999, Ms. Daldegan tried unsuccessfully to contact the respondent on 31 occasions. This conduct violates Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

9. On March 19, 1999, the respondent had Ms. Daldegan execute an agreement as to final determination of tax liability. The document asserted that Ms. Daldegan was owed $59,539 in refunds for the tax years 1992 through 1996.

10. On April 2, 1999, the IRS issued a letter to Ms. Daldegan stating that she had paid deficient tax for the 1997 tax year. That letter demanded $12,775 plus a penalty of $2,555.

11. Between April and the end of August 1999, Ms. Daldegan attempted to contact the respondent on 25 occasions and the respondent failed to respond. This conduct violates Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

12. On August 30, 1999, the IRS sent a notice to Ms. Daldegan stating that she owed $16,986.36 for the 1997 tax year. That amount included interest in the amount of $1,656.36. Ms. Daldegan was informed that penalties and interest would continue to accrue until the entire amount was paid in full.

13. Upon receipt of this notice, Ms. Daldegan contacted the respondent. The respondent informed her that he would "take care of it." The respondent took no action on Ms. Daldegan's request despite his assurance that he would take care of it, in violation of Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client; a lawyer shall not neglect a legal matter entrusted to him).

14. On September 3, 1999, the Colorado Department of Revenue sent a notice of deficiency to Ms. Daldegan stating she owed $2,000.34 for the 1997 tax year.

15. On October 4, 1999, the IRS sent Ms. Daldegan stating that she owed $17,181.02 for the 1997 tax year which included additional penalties and interest.

16. From the beginning of September 1999 to the end of October 1999, Ms. Daldegan attempted to contact the respondent on nine occasions and the respondent failed to respond in violation of Colo. RPC 1.4(a) (a lawyer shall keep client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

17. Ms. Daldegan eventually learned of the respondent's cell phone number and contacted him on October 26, 1999. During that conversation, the respondent misrepresented to Ms. Daldegan that he would take care of the matters with the IRS. The respondent took no further action and Ms. Daldegan has not heard from the respondent since. There is no evidence that the respondent ever contacted the IRS on her behalf. This conduct violates Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client and not neglect a legal matter entrusted to that lawyer), as well as Colo. RPC 8.4(c) (a lawyer shall not

engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

18. The respondent failed to draft the will, other estate planning documents, or the incorporation documents. This conduct violates Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect a legal matter entrusted to him).

19. As of February 25, 2000, Ms. Daldegan has paid a certified public accountant, Ronny Farmer, $1,220 to research and rectify her tax problems that were the direct result of the respondent's actions. Ms. Daldegan has paid all back taxes, penalties and interest due.

20. The foregoing conduct of the respondent violates Colo. RPC 1.1 (a lawyer shall provide competent representation to a client); Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client, and shall not neglect a legal matter); Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about the status of matter and promptly comply with reasonable requests for information); and Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

WHEREFORE, the complainant prays at the conclusion hereof.

*The Wright Matter*

**(Neglect – Colo. RPC 1.3; Failure to Communicate – Colo. 1.4(a); Dishonesty, Fraud, Deceit or Misrepresentation – Colo. RPC 8.4(c))**

21. Paragraphs 1 through 20 are incorporated herein.

22. Steven and Maryanne Wright are married. Steven Wright is an insurance agent who met the respondent through a mutual client in 1994 or 1995.

23. In 1997, Mr. and Mrs. Wright had been engaged in a dispute with the IRS over the amount of a tax liability owed for a number of years. The IRS contended that the Wrights owed approximately $75,600 in income tax for the 1992 through 1995 tax years.

24. On or about March 28, 1997, the Wrights entered into an installment agreement with the IRS to pay $150 per month on their tax liability until final resolution of their tax problem. The IRS had already filed a tax lien against them, but was not pursuing collection. The Wrights, through attorney James Mundt, submitted an offer in compromise to settle the matter for $25,000.

25. In about August 1997, the Wrights discussed their IRS problems with the respondent, who volunteered to take a look at their tax information. The respondent thereafter advised the Wrights that by changing their designations to a "cash basis taxpayer" and re-filing past tax returns, there would be no past tax due and they would be subject to a refund. The respondent also suggested filing an innocent spousal appeal, asserting that Ms. Wright had no knowledge of the tax situation.

26. The Wrights thereafter retained the respondent to amend their taxes. The Wrights did not enter into a fee agreement with the respondent.

27. Subsequently, in 1997 and 1998, the respondent represented to the Wrights that he was negotiating with the IRS and that he had prepared amended tax returns for the tax years 1992 through 1997. The respondent advised the Wright to stop making their $150 per month payments to the IRS under the installment contract because his negotiations with the IRS had proved fruitful. In fact, the respondent had made no contact with the IRS. This conduct violates Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

28. The respondent misrepresented to the Wrights that not only did they have no tax liability for 1992 through 1997, but that they were also entitled to a refund of $18,000. This conduct violates Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

29. In January 1999, the respondent sent the Wrights a copy of a letter pur-

portedly written to him by Martindale–Hubbell. This letter was fraudulent and stated:

"This letter is to proudly inform you that you have been selected as one of the nation's top one hundred tax defense lawyers. This recognition is the result of our interviews and questionnaires with the Bar and the Bench within the jurisdictions you have practiced within the last 24 months. . . . ."

This letter was prepared by the respondent and was fraudulent, and violates Colo. 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

28. In January and February 1999, the Wrights received notice that the IRS was attempting to enforce its tax lien by serving letters of intent to levy and notices of garnishment. The Wrights subsequently scheduled an appointment with the respondent.

29. In February 1999, Steve Wright traveled to the respondent's office. In the presence of Steve Wright and two of the respondent's legal assistants, John Field and Julie Belle, the respondent led everyone to believe that he was engaged in a telephone conversation with Carol Schultz, Regional Counsel for the IRS. During this staged conversation, the respondent also indicated that he had patched U.S. District Court Judge, Lewis Babcock into his conversation with Ms. Schultz. The respondent misrepresented to those present that he had worked out a deal to stop the IRS from proceeding with its collection efforts against the Wrights. The conduct described in this paragraph violates Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). The respondent never spoke with Ms. Schultz nor Judge Babcock.

30. In February 1999, the respondent called the Wrights at home and told them that upon Judge Babcock's insistence, he and Carol Schultz had attended a six hour conference in the Judge's chamber regarding their matter. The respondent further misrepresented to the Wrights that the conference had resulted in an award to them in excess of $800,000. The foregoing conduct by the re-

spondent described in this paragraph violates Colo. RPC 8.4(c) (engaging in conduct involving dihonesty, fraud, deceit or misrepresentation).

31. In April 1999, the respondent invited the Wrights to come to his office to meet with Carol Schultz to finalize the settlement. While the Wrights were in his office, the respondent misrepresented to them that Carol Schultz was on the telephone with him. The respondent misrepresented that Ms. Schultz could not meet with them in person because she needed to get back to Denver to catch a connecting flight to Washington, D.C. and appeared to be arguing with Ms. Schultz regarding how and when the payment would be made and how the IRS would handle payment of his attorney's fees. The respondent further misrepresented to the Wrights that the settlement in excess of $750,000 would be solidified within two weeks and the IRS would pay $66,000 for his attorney's fees. The respondent finally misrepresented that he would go to the FBI to pick up the settlement documents. The foregoing conduct of the respondent described in this conduct violates Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

32. Upon review of documents retrieved from the respondent, the respondent had only filed the tax return for 1998 on behalf of the Wrights and did no negotiations with the IRS or any amended returns for the tax years of 1992 through 1997. This conduct violates Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect a legal matter entrusted to him).

33. Commencing in June 1999, the IRS became more aggressive in collecting from the Wrights. The IRS garnished the wages of both Steven and Maryanne Wright. The Wrights immediately contacted the respondent.

34. On or about June 15, 1999, the respondent obtained an IRS form entitled "Agreement as to Final Determination of Tax Liability." The respondent filled in information on the form indicating that the Wrights had been awarded $794,000 as damages and were additionally entitled to two

refunds from the IRS totaling in excess of $54,000. The respondent executed the documents as the Wrights' attorney and then forged the signature of Chaz Champion, the Chief District Counsel for the IRS. This conduct violates Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

35. Thereafter, the respondent assured the Wrights that the award and refund would be received "any day" or "by the end of the week." This conduct violates Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

36. In the meantime the federal tax liens still encumbered the Wrights' house.

37. On June 30, 1999, the respondent sent a letter to Steven Wright wherein he wrote the following:

> This letter is our firm's representation that the award in your favor in the above litigation will be paid or otherwise collected within the next 90 days. As you are aware your award was in excess of $800,000 and has not been currently paid because of a dispute between the IRS and the Justice Department over whether the Justice Department had authority to acquiesce to your claims.
>
> Please advise any prospective lender to contact the undersigned in the event more information is necessary.

The information contained in this letter was untrue, and the respondent's conduct in preparing and sending the same violates Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

39. When the refund still had not arrived, Steven Wright called the U.S. District Court in Denver and learned that there had never been a case filed on his behalf. When confronted with this information, the respondent misrepresented to Steven Wright that the case was "closed" because the matter did not want the matter to become public. This conduct violates Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

40. Subsequently, the majority of the Wrights' calls to the respondent went unanswered. This conduct violates Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

41. On November 29, 1999, the IRS issued notices stating that the Wrights owed the IRS $91,780.85 in taxes, penalties and interest. These notices do not include their 1996 and 1997 taxes or Colorado State taxes. The Wrights estimate that their total tax liability now exceeds $150,000.

42. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5; and violates Colo. RPC 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect a legal matter entrusted to him); Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); and Colo. RPC 8.4(c) (a lawyer shall not engage in any conduct involving dishonesty, fraud, deceit or misrepresentation).

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct and that he be appropriately disciplined and assessed the costs of these proceedings.